## Pittsburgh Milk Company *v.* Pittsburgh et al., Appellants.

Argued October 4, 1948. Before MAXEY, C. J., DREW, LINN, PATTERSON, STEARNE and JONES, JJ.

*J. Frank McKenna, Jr.,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellants.

*Charles K. Robinson,* with him *Hamilton A. Robinson,* for appellee.

OPINION BY MR. JUSTICE DREW, November 8, 1948:

The Pittsburgh Milk Company, plaintiff, a Pennsylvania corporation, with its place of business in Pittsburgh, filed a bill in equity to restrain the City of Pittsburgh, a city of the second class, its Mayor and its Treasurer, from collecting from plaintiff, a milk dealer in the City, the mercantile tax and license fee imposed by City Ordinances Nos. 488 and 489. Defendant answered, the parties agreed upon a "Case Stated", argument was had before the court en banc, and that learned

court granted the injunction and entered a final decree that defendants be enjoined and restrained from levying upon or collecting such annual tax and license fee from plaintiff. From that decree this appeal was taken.

From the "Case Stated" we take the following facts: The activities of plaintiff are in general as follows: Plaintiff buys raw milk from dairy farmers and transmits the same in bulk to its place of business in Pittsburgh where it treats the milk, pasteurizing all of it and homogenizing a certain percentage thereof. Plaintiff then bottles the milk and sells the same at wholesale or retail throughout the Pittsburgh district.

Plaintiff milk dealer pays a license fee pursuant to the provisions of the Milk Control Law of April 28, 1937, P. L. 417, as amended. In the year 1946 plaintiff received, produced or brought within the Commonwealth an average daily total quantity of milk of between 25,000 and 50,000 pounds, and plaintiff paid a license fee of $300.00 for the year 1947 as required by the provisions of Art. IV, § 408 (13) of said law. The license issued to plaintiff for the year 1947 was a renewal of former licenses of the same kind issued by the Milk Control Commission. Plaintiff will be required to renew annually said license by application filed with the Commission.

On June 25, 1947, the General Assembly of the Commonwealth of Pennsylvania passed Act No. 481 of 1947, P. L. 1145, which empowers cities of the second class and other political subdivisions to levy taxes on persons, transactions, occupations, privileges, subjects and personal property which are not now and do not hereafter become subject to a State tax or license fee.

On December 1, 1947, the City of Pittsburgh enacted its Mercantile Tax Ordinance No. 488 of 1947, pursuant to the authority contained in said Act No. 481. This ordinance imposes a tax at the rate of one mill on each dollar of the annual gross business transacted by a wholesale vendor or dealer in goods, wares or merchandise, and a tax of two mills on each dollar of the annual

gross business transacted by any retail dealer or vendor in goods, wares or merchandise. On the same date, the City enacted Ordinance No. 489 of 1947, which requires wholesale dealers, retail dealers and others to procure mercantile licenses to conduct business within the City of Pittsburgh for the year 1948 and for succeeding years.

The questions to be decided in this case are whether or not plaintiff must procure the mercantile license provided for by Ordinance No. 489 and whether or not plaintiff must pay the mercantile tax provided for by Ordinance No. 488; or whether the City of Pittsburgh is prohibited from imposing said tax and license fee on plaintiff by reason of the provisions contained in Section 1 of said Act No. 481 of 1947. This section reads as follows: ". . . to levy, assess and collect or provide for the levying, assessment and collection of . . . taxes on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivision, as it shall determine, *except that such local authorities shall not have authority by virtue of this act to levy, assess and collect or provide for the levying, assessment and collection of any tax on a privilege, transaction, subject, occupation or personal property which is now* or does hereafter become *subject to a State* tax or *license fee*; . . . It is the intention of this section to confer upon such political subdivision the *power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now* tax or *license* . . ." (Italics added.)

That language is clear and precise. There is no room for doubt concerning the intention of the Legislature, which intention is controlling. It is conceded plaintiff is a dealer in milk and pays an annual *license fee* to the Commonwealth for the privilege of doing business.

Act 481 of 1947 was designed for the financial relief of local municipalities. It broadened the tax base for Pittsburgh but at the same time it did impose a limita-

tion on the City's right to tax. The State reserved to itself the right to select its own subjects of taxation and provided that the City may not invade those tax fields necessary for the maintenance of the State government. The State further provided that if the City does levy a tax under the authority of the statute and thereafter the State wants that same tax for itself, the City's tax shall expire at the end of the City's then current fiscal year.

Defendants in their answer to the bill averred that plaintiff is within the terms of the Pittsburgh's Mercantile Tax and License Ordinances, that plaintiff does not pay a State tax or license fee within the meaning of those terms as used in Act 481, and that, therefore, plaintiff must pay the city mercantile tax and license fee.

The lower court decided the case on the ground that plaintiff pays a *license fee* pursuant to the provisions of the Milk Control Law, and that, therefore, under Act 481 of 1947 the City may not levy the mercantile tax against plaintiff. The court in its opinion said: "If it were not for the three words *'or license fee,'* we would have no difficulty in deciding this case in favor of the defendants, and would dismiss the Bill". We agree with this. Those three words make all the difference, and since they cannot be disregarded or explained away, our decision must be the same as that of the court below.

Section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, provides: ". . . When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." That statute also provides, Section 58 (3) that ". . . All provisions of a law of the classes hereafter enumerated shall be strictly construed: . . . (3) Provisions imposing taxes." Furthermore, it is well settled that unless property is clearly within a taxing statute, it is not taxable: *Dorrance's Estate*, 333 Pa. 162, 171, 3 A. 2d 682.

A State license fee, which the Legislature had in mind, is, as we said in *Pa. Liq. Con. Bd. v. Publicker*, 347 Pa. 555, 560, 32 A. 2d 914: ". . . a charge which is imposed by the sovereign, in the exercise of its police power, upon a person within its jurisdiction for the privilege of performing certain acts and which has for its purpose the defraying of the expense of the regulation of such acts for the benefit of the general public." It is this very type of license fee to which plaintiff corporation is subject under the Milk Control Law. Obviously, since plaintiff is subject to a State license fee for the "privilege" of engaging in the occupation of a milk dealer, the municipality cannot levy on plaintiff a mercantile tax and license fee on that same "privilege." This is true even though the State license fee to which plaintiff milk dealer is subject is merely for regulatory purposes, and the tax sought to be levied by the City is for the purpose of raising revenue.

The Act expressly provides that the City may not tax a *"privilege, transaction, subject, occupation* or personal property" which is already subject to a State license fee. The City cannot, therefore, tax plaintiff for the *"privilege, transaction, subject, occupation* or personal property" because plaintiff has already paid a license fee to the State. The City's mercantile tax is a tax on a privilege and/or occupation.

Defendants contend that since the mercantile tax and license fee which they seek to impose on plaintiff is for revenue and the State license fee to which plaintiff is subject is only for regulatory purposes, there is no duplication, and, therefore, the City tax and license fee are not prohibited. With this argument we cannot agree, for it completely ignores the plain and unambiguous language of the Act. Whether or not the City can levy its mercantile tax and license fee does not depend on the fact that these do not duplicate the State license fee in question. A license fee never can duplicate a tax for the obvious reason that the former is imposed for

regulatory purposes and the latter solely for the raising of revenue. In this connection we said in *Pa. Liq. Con. Bd. v. Publicker*, supra: "A license fee . . . is not the equivalent of or in lieu of an excise or a property tax, which is levied by virtue of the government's taxing power solely for the purpose of raising revenue". The Legislature, having full knowledge that license fees are used for regulatory purposes, meant that the words "license fee" be given their full meaning—a prohibition in addition to the prohibition of taxing for revenue anything that the State had taxed for revenue.

The cases relied upon by defendants are not in point. None of them involved the matter of a State license fee, except *Puntureri v. Pittsburgh School Dist.*, 359 Pa. 596, 60 A. 2d 42. In that case, however, the mercantile tax imposed by the School District was pursuant to the Act of June 25, 1947, P. L. 745, which contained no prohibition as to State license fees such as that set forth in the statute here under consideration.

For these reasons, we are convinced that the decree appealed from must be affirmed.

Decree affirmed, at costs of the City of Pittsburgh.