Tax Review Board *v.* Belmont Laboratories Company, Appellant.

474

Argued January 13, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Laurence H. Eldredge,* with him *Francis X. Diebold,* for appellant.

*Leonard B. Rosenthal,* Assistant City Solicitor, with him *David Berger,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE BELL, May 2, 1958:

The question involved may be thus stated: Does the Philadelphia ordinance validly assess a net profits tax upon a partnership whose sole office is in Philadelphia upon profits earned in a foreign corporation on goods manufactured and sold in a foreign country, when the residence and domicile of all members of the partnership is outside of Philadelphia?

William H. Gross and his wife, Annie W. Gross, were residents of and domiciled in Delaware County, Pa. During the years 1950 to 1955 inclusive they conducted a partnership business known as Belmont Laboratories Company, hereinafter called Belmont. Belmont manufactured and sold in Philadelphia and dis-

tributed throughout the United States Mazon Ointment and Mazon Soap. The partnership's sole office and place of business was and is at 4730 Market Street, Philadelphia. The partners paid the Philadelphia Net Profits Tax on all Mazon Ointment and Mazon Soap manufactured and sold in Philadelphia (and distributed throughout the United States).

The present case involves the City's attempt to tax the defendant partnership for net profits which it received under the following circumstances: Mazon Ointment and Mazon Soap are manufactured in Canada by Laurentian Laboratories, Ltd., with the aid of a secret solution sent them by Belmont, and sold and distributed in Canada and in some foreign countries by an affiliated organization. Laurentian, after deducting its costs and commissions, and all Canadian sales taxes and income taxes upon the above mentioned merchandise, deposits the balance to the credit of Belmont in the Royal Bank of Canada. From time to time these net profits, which are earned in a foreign country on goods made in a foreign country, are transferred by Belmont to its bank account in Philadelphia. The City seeks to tax these profits on the basis that Belmont is a partnership which is domiciled in Philadelphia. Belmont's principal contention is (1) that a partnership is not an entity which can be taxed by Philadelphia, and (2) that because the domicile of the individuals who comprise the partnership is outside of Philadelphia, and none of the business or activities in question are conducted in Philadelphia, the tax cannot be assessed on these profits.

The City of Philadelphia derives its taxing powers from the Act of August 5, 1932, P. L. 45, 53 PS §15971, which is known as the Sterling Act. The Sterling Act empowers the City by ordinance to impose taxes ". . . on *persons, transactions,* occupations, privileges, sub-

jects and personal property, *within the limits of such city** . . .*", with certain exceptions not here pertinent.

The Philadelphia income tax ordinance, approved December 13, 1939, as amended, §2, imposes a tax of 1¼% on the *net profits earned "of businesses,* professions, *or other activities conducted in Philadelphia by non-residents"*, who are not domiciled in Philadelphia, and a tax at the same rate upon all of the *net profits earned by "businesses,* professions or other activities *conducted by residents"* who are domiciled in Philadelphia: Code of General Ordinances of the City of Philadelphia (1956), §19-1502(1)(d)(c). Section 1 of the ordinance defines a resident as "an individual, co-partnership, association, corporation, or any other entity domiciled in the [City of Philadelphia]": Code of General Ordinances of the City of Philadelphia (1956), §19-1501(7). It defines a non-resident as "an individual, co-partnership, association, corporation, or any other entity domiciled outside the City [of Philadelphia]": Code of General Ordinances of the City of Philadelphia (1956), §19-1501(5).

Article 1, §101(i), of the Revised Income Tax Regulations gives the following definitions: " 'Resident' means an individual, co-partnership, association, or other entity *domiciled* in the City of Philadelphia. 'Domicile' is a place where a person has his true, fixed, permanent home and principal establishment, to which, whenever absent therefrom, he intends to return and continues until another permanent home and principal establishment is acquired."

This definition of "domicile" is in accord with the decisions of this Court: *Publicker Estate*, 385 Pa. 403, 405, 123 A. 2d 655.

---

* Italics throughout, ours.

The constitutionality of the ordinance was sustained in *Dole v. Philadelphia,* 337 Pa. 375, 378, 379, 11 A. 2d 163.

In *Breitinger v. Philadelphia,* 363 Pa. 512, 70 A. 2d 640, the Court said (pages 514, 515) : "Two fundamental principles should be kept in mind in considering the ordinance and its administration. The first measured the City's power to tax; the second prescribes strict construction. We said, in Hillman Coal & Coke Co. v. Jenner Twp. et al., 300 Pa. 108, 112, 150 A. 293 (1930), ' "It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred": 4 Dillon on Municipal Corp. 2398 . . .'

". . . 'Tax statutes should receive a strict construction: Boyd et al. v. Hood et al., 57 Pa. 98 [1868]. In cases of doubt the construction should be against the government: Gould v. Gould, 245 U.S. 151, 153, 38 S. Ct. 53 [1917]; U. S. v. Merriam, 263 U.S. 179, 188, 44 S. Ct. 69 [1923]; Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455 [1926].' "

In *Paper Products Co. v. Pittsburgh,* 391 Pa. 87, 137 A. 2d 253, the Court said (page 94) : ". . . Furthermore, if there were any reasonable doubt, tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authorities: Panther Valley Television Co. v. Summit Hill Borough, 376 Pa. 375, 102 A. 2d 699; Pittsburgh Milk Co. v. Pittsburgh, 360 Pa. 360, 62 A. 2d 49; Allentown Mercantile Tax Case, 370 Pa. 161, 87 A. 2d 480."

In the light of the foregoing authorities, it is clear that the Philadelphia ordinance approved December 13, 1939, as amended, imposes a tax (1) on the net profits earned by businesses or other activities *con-*

*ducted in Philadelphia by non-domiciliaries,* and (2) upon all of the net profits *earned* by businesses or other activities conducted *by persons* who are *domiciled* in Philadelphia, irrespective of where the business is conducted, and (3) that a person who is not domiciled in Philadelphia cannot be taxed on any business conducted by him outside of Philadelphia. The question here involved arises under the above mentioned subdivision (2). Section 1 and Section 2 of the ordinance, if considered alone, obviously treat a partnership as a person or legal taxable entity. Because of this language the City contends that the partnership is *an entity and its domicile is in the City of Philadelphia,* irrespective of the fact that the partners' domicile is outside of Philadelphia—hence the partnership is liable for taxes on all its business no matter in what country conducted.

Belmont, on the other hand, contends that there is no such legal entity as a partnership; that a partnership is "an association of two or more persons to carry on as co-owners a business for profit" (Act of March 26, 1915, P. L. 18, §6, 59 PS 11, known as the Uniform Partnership Act); that the domicile of a partnership is that of the individuals who compose it, and a partnership cannot acquire a domicile or residence separate or distinct from that of the individuals who compose it. There is a strong and almost equal division of authority on this point throughout the United States. The exact question has never been squarely decided by this Court.

In *Morrison's Estate,* 343 Pa. 157, 22 A. 2d 729, which involved the priority of creditors to goods of the partnership and of the individual partners, this Court said (page 162): ". . . We deem it to be the law in Pennsylvania and the approved opinion in most other jurisdictions that a partnership is not recognized as an entity like a corporation, that it is not a legal en-

tity having as such a domicile or residence separate and distinct from that of the individuals who compose it. It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit. This is subject to an apparent exception, for while a partnership as such is not a person, it, as a matter of fact, is treated by a legal fiction as a quasi person or entity for such purposes as keeping of partnership accounts and marshaling assets. It is so treated under the law of this Commonwealth and under the federal Bankruptcy Act."

While that is the general rule, it does not follow that for purposes of taxation a partnership may not be taxed, or may not have a domicile for tax purposes, separate and distinct from that of the individuals who compose it. In other words, a partnership may be recognized as a legal entity for certain purposes. In *Burnet v. Leininger*, 285 U. S. 136, the Court held that Congress has power to tax a partnership as an entity, or to tax the partners individually. The Court said (page 142) : "We find no reason to doubt the validity of the tax. The Congress, having the authority to tax the net income of partnerships, could impose the liability upon the partnership directly, as it did under the Revenue Act of 1917 (40 Stat. 300, 303), or upon the 'individuals carrying on business in partnership', as in the statutes here involved."

The modern trend of both the Courts and legislative bodies is to treat a partnership for certain purposes as an entity. Cf. Cooley on Taxation, 4th Ed., Vol. 2, §473, page 1060; Pa. R. C. P. 2128; Internal Revenue Code, August 16, 1954, 26 U.S.C.A., §6031 which requires partnerships to file an information return : *Biddle Appeal*, 390 Pa. 460, 135 A. 2d 915.

In Cooley on Taxation, supra, (page 1060), the general rule is thus stated : "Partnership property is tax-

able as an entity at the domicile of the firm rather than at the residences of the several owners; and the domicile of a partnership, for the purposes of taxation, is its place of business."*

The Sterling Act restricts the City as above set forth to taxes on *persons* or transactions *within the limits of such city,* and every taxing ordinance and statute must be strictly construed in favor of the taxpayer. Did the Sterling Act, which authorized Philadelphia to tax "persons . . . within the limits of such city . . ." contemplate and permit the taxation of a partnership whose persons or partners resided and conducted their business or transactions outside of Philadelphia? Perhaps it was with this question or doubt in mind that the City promulgated §220(b) of the Regulations: "If all partners are residents of Philadelphia, irrespective of where the activities of the partnership are conducted or if *all* the activities of the partnership are conducted in Philadelphia, irrespective of the residence of the partners, *all* of the net profits of the partnership shall be taxable on the partnership net profits tax return." This section of the Regulations also gives the following "example" of a "Partnership located in Philadelphia": "1 partner (a resident of Philadelphia) has a 10% interest, 2 partners (non-residents of Philadelphia) have remaining 90% interest; net profits $100,000; 45% of business conducted in Philadelphia, 55% outside the City; $45,000 taxable to the partnership and $5,500 (10% of $100,000 less 10% of $45,000) taxable to the partner residing in Philadelphia."

---

* In 84 C.J.S., §328, page 662, the general rule is stated that where a partnership is considered to be an entity, it has a domicile for tax purposes at the place where its business is carried on, and its personal property is taxable at that place irrespective of the residence or domicile of the individual partners. However, the footnotes indicate that there is a wide split of authority on this point.

From the foregoing Regulations it appears that the City itself recognized that a partnership whose office was in Philadelphia, but one or more of whose partners was domiciled outside of Philadelphia, was subject to the net profits tax, *so far as the non-domiciliary partners,* were concerned, *only on the business actually conducted in Philadelphia.*

We need not decide at this time whether a partnership whose office is in Philadelphia, would be liable under the provisions of the Sterling Act and an all inclusive ordinance, to a net profits tax on *all* earned net profits of the partnership, when one or all the partners are resident and domiciled outside of Philadelphia and all the business is conducted and profits earned outside of Philadelphia. We need only decide and do decide that under the Philadelphia Ordinance as drawn and the Regulations thereunder, and the administrative practices up until 1956, that the net profits of this taxpayer arising from the Canadian and other foreign transactions are not subject to the present City Ordinance.

Judgment reversed.