## Tax Review Board, Appellant, *v.* D. H. Shapiro Company.

Argued April 18, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Levy Anderson,* First Deputy City Solicitor, with him *Ellis A. Horwitz* and *Leonard B. Rosenthal,* Assistant City Solicitors, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for appellant.

*Christopher Branda, Jr.,* with him *Dechert, Price & Rhoads,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 13, 1962:

D. H. Shapiro Company is a partnership engaged in the practice of public accounting, having its only office in the City of Philadelphia. Throughout the fiscal years ending March 31, 1955 to March 31, 1959, the years here in question, Shapiro derived gross receipts from accounting services performed for clients located

outside of Philadelphia, ranging from a low of $46,-214.95 in fiscal 1955 to a high of $67,081.50 in fiscal 1957. During each of the fiscal years involved, at least one of Shapiro's partners was a nonresident of Philadelphia, and the aggregate profit participation of the nonresident partners was never less than 46 per cent; the highest proportion of nonresident partners was 4 out of 5 in fiscal 1958, representing an aggregate profit participation of 89 per cent. Approximately 78 percent of Shapiro's receipts from out-of-city clients was attributable to services actually performed outside of the city at the places of business of various clients. The remaining 22 per cent is attributed to review, typing and proofreading of accounting statements in the office in Philadelphia and also to a ratable share of non-earning "office time". "Office time" includes time spent on office administration, meetings, duplication of reports, reading of accounting and tax periodicals, etc., which Shapiro does not charge to specific clients.

In filing net profits tax returns for the years in question, Shapiro excluded from its tax base the distributive shares of its nonresident partners attributable to services performed outside of Philadelphia. The Department of Collections of the City assessed additional taxes for the years in controversy, denying that Shapiro could allocate its net profits in the manner described. The Tax Review Board sustained the assessment, holding that Shapiro's entire net profit was taxable. Shapiro's appeal to the court below was sustained and the board reversed. The City, by stipulation, intervened and appeals the order of the court below to this Court.

The question presented for our determination is whether a partnership composed of residents and nonresidents of Philadelphia, having its sole office in Philadelphia and performing services both outside and inside Philadelphia, is subject to the Philadelphia Net

Profits Tax on all of its profits, or whether the profits earned by nonresident partners for services performed outside Philadelphia are properly excludable from the partnership's net profits for purposes of the tax.

The tax ordinance of the City, in its pertinent parts, reads as follows: "Sec. 19-1502. IMPOSITION OF TAX.— (1) An annual tax for general revenue purposes is hereby imposed as follows: . . . (c) On the net profits earned in businesses, professions, or other activities conducted by residents after January 1, 1949 at the rate of $1\frac{1}{4}\%$, after January 1, 1956 at the rate of $1\frac{1}{2}\%$, and after January 1, 1960 at the rate of $1\frac{5}{8}\%$. (d) On the net profits earned in *businesses, professions or other activities conducted in Philadelphia by nonresidents* after January 1, 1949 at the rate of $1\frac{1}{4}\%$, after January 1, 1956 at the rate of $1\frac{1}{2}\%$, and after January 1, 1960 at the rate of $1\frac{5}{8}\%$." (Emphasis added.)

The City seeks to treat the partnership as an entity separate and distinct from its partners, thereby establishing for it a situs or "residence" within the city for tax purposes. Shapiro argues that the partnership may not be considered as an entity having its "residence" in Philadelphia thereby making its net profits taxable in full under section 19-1502(c) of the Philadelphia Code. Appellee further contends that income derived by it from accounting services performed outside the city is not from "businesses, professions or other activities conducted in Philadelphia" merely because it has its office in the city and a minor portion of the overall services for its clients is performed at that office.

In order to resolve the issue, we must look to the Act of Legislature which empowers the City to levy the tax, and the language of the ordinance itself. The City's power to levy the tax is conferred by the Sterling Act, Act of August, 5, 1932, P. L. 45, 53 P.S. §15971.

That act empowers the City to impose taxes ". . . on *persons, transactions,* occupations, privileges, subjects and personal property, *within the limits of such city* . . ." (Emphasis supplied.) In construing this act in *Tax Review Board v. Belmont Laboratories,* 392 Pa. 473, 477, 141 A. 2d 234 (1958), the Court said: "In Breitinger v. Philadelphia, 363 Pa. 512, 70 A. 2d 640, the Court said (pages 514, 515): 'Two fundamental principles should be kept in mind in considering the ordinance and its administration. The first measured the City's power to tax; the second prescribes strict construction. We said, in Hillman Coal & Coke Co. v. Jenner Twp. et al., 300 Pa. 108, 112, 150 A. 293 (1930), " 'It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakably conferred': 4 Dillon On Municipal Corp. 2398 . . ."

" '. . . "Tax statutes should receive a strict construction: Boyd et al. v. Hood et al., 57 Pa. 98 (1868). In cases of doubt the construction should be against the government: Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53 (1917); U. S. v. Merriam, 263 U. S. 179, 188, 44 S. Ct. 69 (1923); Com. v. P. R. T. Co., 287 Pa. 190, 196, 134 A. 455 (1926)." '

"In Paper Products Co. v. Pittsburgh, 391 Pa. 87, 137 A. 2d 253, the Court said (page 94): '. . . Furthermore, if there were any reasonable doubt, tax statutes must be strictly construed in favor of the taxpayer and most strongly against the taxing authorities: Panther Valley Television Co. v. Summit Hill Borough, 376 Pa. 375, 102 A. 2d 699; Pittsburgh Milk Co. v. Pittsburgh, 360 Pa. 360, 62 A. 2d 49; Allentown Mercantile Tax Case, 370 Pa. 161, 87 A. 2d 480.' "

In that case, which involved the net profits of a partnership whose sole office was in Philadelphia, but whose partners were all nonresidents, we held that net

profits of the partnership attributable to goods manufactured and sold in a foreign country were not taxable under the same ordinance as is here in question. We specifically declined to decide "whether a partnership whose office is in Philadelphia, would be liable under the provisions of the Sterling Act and an all inclusive ordinance, to a net profits tax on *all* earned net profits of the partnership, when one or all the partners are resident and domiciled outside of Philadelphia and all the business is conducted and profits earned outside of Philadelphia". Here, of course, we must decide the question which we did not decide in *Belmont,* with the additional fact that some of the partnership's business is conducted and profits earned in Philadelphia.

In *Belmont,* at page 480, Mr. Justice, now Chief Justice, BELL said: "The Sterling Act restricts the City as above set forth to taxes on *persons* or transactions *within the limits of such city,* and every taxing ordinance and statute must be strictly construed in favor of the taxpayer. Did the Sterling Act, which authorized Philadelphia to tax 'persons . . . within the limits of such city . . .' contemplate and permit the taxation of a partnership whose persons or partners resided and conducted their business or transactions outside of Philadelphia? Perhaps it was with this question or doubt in mind that the City promulgated §220(b) of the Regulations: 'If all partners are residents of Philadelphia, irrespective of where the activities of the partnership are conducted or if *all* the activities of the partnership are conducted in Philadelphia, irrespective of the residence of the partners, *all* of the net profits of the partnership shall be taxable on the partnership net profits tax return.' This section of the Regulations also gives the following 'example' of a 'Partnership located in Philadelphia': '1 partner (a resident of Philadelphia) has a 10% interest, 2 partners (non-residents of Philadelphia) have remaining 90% interest; net profits

$100,000; 45% of business conducted in Philadelphia, 55% outside the City; $45,000 taxable to the partnership and $5,500 (10% of $100,000 less 10% of $45,000) taxable to the partner residing in Philadelphia'.

"From the foregoing Regulations it appears that the City itself recognized that a partnership whose office was in Philadelphia, but one or more of whose partners was domiciled outside of Philadelphia, was subject to the net profits tax, *so far as the non-domiciliary partners, were concerned, only on the business actually conducted in Philadelphia."* Section 220(b) of the regulations has not been changed but, since our decision in *Belmont,* the above quoted example has been changed and now reads as follows: "(2) Partnership located in Philadelphia; 1 partner (a resident of Philadelphia) has a 10% interest, 2 partners (non-residents of Philadelphia) have remaining 90% interest; net profits $100,000; 45% of business conducted in Philadelphia, 55% outside the City—$100,000 taxable to the partnership as an entity." Any doubts which the City had of its power to tax partnerships as entities have apparently been dispelled, as evidenced by the above quoted example. We, of course, are not concluded by this example from entertaining our own doubts about the City's powers.

The *Belmont* language regarding the strict interpretation of tax measures, leads us to agree with the court below, which stated the controlling question in the case as follows: "We believe the narrow question before us, is not whether it is constitutionally possible for a partnership to be deemed to have a domicile for tax purposes separate and apart from the individuals who compose it, but rather has the City been granted the power, by the Sterling Act, to attribute to a partnership the concept of separate domicile. Stated differently, did the legislature intend to include within the purview of the term 'persons' as set forth in the

Act, the authority for the City, to define partnership in the manner here described since it is well established that an ordinance cannot create a greater municipal taxing power than is found in the statute pursuant to which the ordinance was enacted."

In *Morrison's Estate,* 343 Pa. 157, 162, 22 A. 2d 729 (1941) we said: "We deem it to be the law in Pennsylvania and the approved opinion in most other jurisdictions that a partnership is not recognized as an entity like a corporation, that it is not a legal entity having as such a domicile or residence separate and distinct from that of the individuals who compose it. It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit. This is subject to an apparent exception, for while a partnership as such is not a person, it, as a matter of fact, is treated by a legal fiction as a quasi person or entity for such purposes as keeping of partnership accounts and marshaling assets . . . Until the promulgation of Pa. R. C. P. 2128, a partnership could not be sued in its firm name, and even yet, under Pa. R. C. P. 2127, partners must be named individually in actions by a partnership." See also: *McElhinney v. Belsky,* 165 Pa. Superior Ct. 546, 69 A. 2d 178 (1949) ; *Rigutto v. Italian Terrazzo Mosaic Co.,* 93 F. Supp. 124 (W.D. Pa. 1950). Under the United States Internal Revenue Code, the federal income tax is imposed upon the distributive shares of each partner, and is payable by him on his individual return, the partnership's duty being limited to the filing of an information return. We could multiply authorities, but we must hold that the weight of authority in this Commonwealth is to the effect that a partnership is treated as an aggregate of individuals and not as a separate entity. In any event, it is clear that the Sterling Act does not plainly and unmistakably empower the City to define a partnership in the manner set

forth in the Ordinance. We therefore hold that the assessment imposed upon appellee is invalid.

Order affirmed.

Mr. Justice COHEN dissents.