Sun Oil Company, Appellant, *v.* Tax Review
Board.
Sun Oil Company, Appellant, *v.* Philadelphia
School District.

Argued January 5, 1965.    Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*James A. Moore,* with him *Milton P. King, Carter Bledsoe,* and *Mancill, Sterling, Magaziner, Seamans & Hedges,* and *Pepper, Hamilton & Scheetz,* for appellant.

*Joseph W. Marshall,* for School District of Philadelphia, appellee.

*Levy Anderson,* First Deputy City Solicitor, with him *Louis Kattelman,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for Tax Review Board, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1965:

Sun Oil Company appeals from holdings below, ruling as taxable Sun's receipts of dividend income derived from its ownership of certain common stocks, as well as a substantial capital gain realized from the sale of one of these stock holdings.

Two separate taxes are involved, the first being the General Business Tax Act, Act of May 23, 1949, P. L. 1669, as amended, 24 P.S. §584.1 et seq., imposing a tax on the privilege of engaging in business within the School District of Philadelphia; and the second being the Philadelphia Mercantile License Tax imposed on the privilege of engaging in business in Philadelphia by §19-1001 et seq. of the Philadelphia Code, under authority granted by the Sterling Act, Act of August 5, 1932, P. L. 45, 53 P.S. §15971.

The taxes levied in the two cases are, to all practical intents and purposes, the same, and if the disputed items of income are taxable, they are taxable in both cases. Sun's position, simply stated, is that the income sought to be taxed was derived from "passive investments" and therefore not taxable.

In *Tax Review Bd. v. Brine Corp.*, 414 Pa. 488, 200 A. 2d 883 (1964), we held that the test in determining the taxability of income under the Mercantile Tax "is neither the characterization of the receipt nor the size of the business; rather, it is the nature of the activity producing the receipt." In that case, arguments very similar to those here made by Sun were rejected by us and we held Brine subject to tax on what Brine called "passive income", including an item of dividends earned on shares of stock. In *Bankers Securities Corp. v. Philadelphia School District*, 16 Pa. D. & C. 2d 248 (1958), affirmed, 188 Pa. Superior Ct. 463, 149 A. 2d 545 (1959), affirmed, 397 Pa. 413, 155 A. 2d 835 (1959), a case which arose under the General Business Tax Act, we also held that income of the type here sought to be excluded from the tax base of the taxpayer was taxable. The same result must be reached in the case at bar.

While we reiterate what we stated in *Brine*, namely, that all income of a business corporation need not necessarily be business income, a study of the instant record indicates that the items of income here disputed were derived, in fact, from business activities and, thus, are taxable.

The court below, in its opinion at No. 285, carefully details each of the items of income in dispute as follows: "The five corporations here involved are: Halliburton Oil Well Cementing Co. (hereafter referred to as 'Halliburton'), East Texas Salt Water Disposal Company (hereafter referred to as 'East Texas'), Seatrain Lines, Inc., (hereafter referred to as 'Seatrain'), Compagnie Francaise Houdry (hereafter referred to as 'Compagnie Francaise') and General Crude Oil Company (hereafter referred to as 'General Crude').

"Halliburton was originally formed in 1924 by seven oil companies, of which appellant was one, for the purposes of servicing oil wells. In 1924, appellant, by

purchase, acquired 100 shares at a price of $100 per share, representing 3.05% of the total stock outstanding. Between 1924 and 1955, various successive splits occurred, so that by August, 1955, appellant's original 100 shares had been converted to 100,000 shares without any additional investment. In September 1957, appellant sold 70,000 shares of Halliburton in order to obtain capital for an expansion program of its rental facilities. The sale price was $63 per share which yielded to appellant a capital gain of $4,403,000. From 1924 to 1957, appellant was represented on Halliburton's Board of Directors by one of its employees who was one of thirteen directors. Appellant, through the years of its ownership of the stock, made use of the services of Halliburton, and paid fees for such services. No preferential treatment was given to appellant with respect to terms, price or service. Through the years, appellant received dividends on its stock holdings.

"East Texas is a company organized and financed by several major oil companies, of which appellant was one, to provide a necessary service to conserve the resources of the East Texas oil fields and protect them from the encroachment of salt water. It was organized at the beginning of the Second World War. During the years here in question, appellant owned 4.53% of the stock of East Texas, and was represented by one director on a board of twenty-one, who was also a member of the Executive Committee of seven. Appellant benefited from the services of East Texas, but received no preferential treatment. If East Texas had not been organized and performed its services, appellant and other companies owning wells in the area would have suffered serious losses from contamination by salt water.

"Seatrain is in the business of transporting railroad freight cars, such as oil tank cars, on oceangoing vessels. Its customers are principally railroads, and dur-

ing the period in question it carried only one tank for appellant. However, it was conceded that appellant benefited from the availability of this means of freight transport. During the years in question appellant owned 18.83% of the outstanding stock of Seatrain, which represents the largest single bloc of voting stock.

"Compagnie Francaise is a French corporation authorized to license the Houdry process patents held by the American Houdry Corporation. Appellant, for the years in question, was the owner of 13.32% of the outstanding stock, and is the largest stockholder. Appellant is also the owner of stock of American Houdry corporation and has included on its returns, for the years in question, in its tax bases, dividends received from American Houdry. Appellant is not represented on the Board of Directors of Compagnie Francaise.

"General Crude is engaged in production of crude oil. For a period of five months in 1957, appellant owned 1.8% of the stock. This stock was sold because (a) according to Texas law appellant was precluded from holding stock of another operating oil company and (b) capital was needed for expansion purposes. From 1954 through 1960, appellant was represented on the Board of Directors of General Crude by one of its employees. For many years appellant has purchased almost the entire production of General Crude."

It is clear that the nature of the business activity producing the receipts is taxable under the applicable acts.

We conclude that the courts below properly ruled that the dividend and capital gains income was taxable under the two tax acts involved.

In view of our decision on the merits, we find it unnecessary to consider or decide the City's motion to quash the appeal at No. 285, and the motion will, therefore, be denied.

Judgments affirmed.

Mr. Chief Justice BELL dissents.