**SAMUEL RAPPAPORT LIMITED PARTNERSHIP**

v.

**TAX REVIEW BOARD OF the CITY OF PHILADELPHIA and Department of Revenue of the City of Philadelphia**

v.

**TAX REVIEW BOARD OF the CITY OF PHILADELPHIA TO the USE OF SAMUEL RAPPAPORT LIMITED PARTNERSHIP.**

**Appeal of DEPARTMENT OF REVENUE OF the CITY OF PHILADELPHIA, Appellant.**

**SAMUEL RAPPAPORT REAL ESTATE**

v.

**TAX REVIEW BOARD OF the CITY OF PHILADELPHIA and Department of Revenue of the City of Philadelphia**

v.

**TAX REVIEW BOARD OF the CITY OF PHILADELPHIA TO the USE OF SAMUEL RAPPAPORT REAL ESTATE.**

**Appeal of DEPARTMENT OF REVENUE OF the CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1996.

Decided Sept. 4, 1996.

Reargument Denied Oct. 18, 1996.

inal access action.

Frank Paiva, Jr., Divisional Deputy City Solicitor, for Appellant.

Stuart D. Rudoler and Joseph C. Bright, for Appellees.

Before DOYLE and FLAHERTY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

The City of Philadelphia appeals an order of the Court of Common Pleas of Philadelphia County (trial court) reversing the decision of the Tax Review Board of the City of Philadelphia (Board) which denied the administrative appeal filed by Samuel Rappaport Limited Partnership (the partnership) and Samuel Rappaport Real Estate (the real estate company), from the assessments of the

City's Mercantile License Tax, General Business Tax, Net Profits Tax and Business Privilege Tax. We reverse and remand.

## Issues

The City presents several issues for our review: 1) whether it may tax gains realized from the disposition of real estate properties by a taxpayer in the business of buying, managing and selling real estate and if so, whether these gains are subject to an inflationary exclusion; 2) whether the trial court erred in not apportioning the taxpayer's gain on the sale of a Fairless Hills, Bucks County, property when the taxpayer does business both in and out of Philadelphia; and 3) whether any accrued interest and/or penalties should be abated if this Court reinstates the Board's assessments.

## Procedural Background

Both the partnership and the real estate company, taxpayers herein, were owned, controlled and operated by the late Samuel Rappaport, a resident of Haverford, Pennsylvania. Mr. Rappaport's limited partner in the partnership was Louis Katz, a resident of Cherry Hill, New Jersey. During 1985 and 1987, the City, by its Department of Revenue, conducted audits of the partnership and the real estate company, for Mercantile License Tax,[1] General Business Tax,[2] Net Profits Tax,[3] and the Business Privilege Tax,[4] for the tax years 1981–1986.

Assessments were duly issued and on February 3, 1988, both taxpayers filed petitions with the Board, claiming that certain gains on the disposition of real estate were not subject to tax because they were unearned.[5]

After hearings held on June 5, 6, and 13, 1990, the Board issued its decision on January 3, 1992, sustaining the assessments. Both taxpayers appealed to the trial court. The Board filed its findings, conclusions and certified record on January 8, 1993. Thereafter, the trial court held that the Board had incorrectly applied the law and remanded the matter to the Board for further consideration.[6] On remand, after the Board heard

---

1. Philadelphia Code § 19–1001. The Mercantile License Tax was imposed upon the gross receipts of persons engaged in business, i.e., "the carrying on or exercising for gain or profit ... any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business" within the City. *Id.* § 19–1003. This tax was repealed and replaced in 1985 by the Business Privilege Tax. The last year for which the mercantile license tax was assessed was 1984.

2. Philadelphia Code § 19–1803, authorizes a tax on the "receipts from business within the City...." This tax was repealed and replaced by the Business Privilege Tax in 1985.

3. Philadelphia Code § 19–1502(1)(c) and (d), impose a tax "[o]n the net profits earned in businesses, professions or other activities conducted by residents" and "non-residents...." "Business" is defined as "[a]n enterprise, activity, profession or undertaking of any nature conducted for profit or ordinarily conducted for profit, whether by an individual, co-partnership, association ... or any other entity." *Id.* § 19–1501. "Net Profits" is defined as "[t]he net gain from the operation of a business, profession or enterprise, after provision for all allowable costs and expenses...." *Id.*

4. Philadelphia Code § 19–2601. The Business Privilege Tax succeeded both the General Business Tax and the Mercantile License Tax in 1985, as authorized by the First Class City Business Tax Reform Act, Act of May 30, 1984, P.L. 345, No. 69, 53 P.S. §§ 16181—16193. It is imposed on the gross receipts and net income of "every person engaging in any business in the City...." Philadelphia Code § 19–2603.

5. Before the hearings, the parties stipulated to the amount of tax claimed by the City to be due and the years with respect to the various taxes:

   5. With respect to the petition of Samuel Rappaport Real Estate, the amount of tax now [claimed to be] due is as follows.

   | | | |
   | --- | --- | --- |
   | Mercantile | 1983 | $ 12,836.00 |
   | Net Profits | 1982 | $ 76,580.00 |
   | | 1986 | $137,187.00 |
   | Business Privilege | 1987 | $285,145.00 |
   | Total | | $511,748.00 |

   3. With respect to the petition of Samuel Rappaport Limited Partnership, the amount of tax now [claimed to be] due is as follows.

   | | | |
   | --- | --- | --- |
   | Net Profit | 1985 | $ 41,939.00 |
   | Business Privilege | 1986 | $ 79,789.00 |
   | Total | | $121,728.00 |

   (Stipulation of Issues and Computations, June 5, 1990, pp. 3 and 5.)

6. In remanding the matter, the trial court concluded that the Board had failed to apply the correct legal principle in deciding whether the gains were taxable. Quoting from *Sharps v. Revenue Commissioner*, 10 Pa. D. & C.2d 463, 468

reargument but took no further testimony, the Board affirmed its prior decision sustaining the assessments but reducing the taxable amounts of the gains by applying the City's CPI formula.[7] In the partnership case, the Board also sustained the assessment of the tax on the gain from the sale of a certain property located in Fairless Hills, Falls Township, Bucks County, Pennsylvania.

The Board found the following facts [8] and made certain conclusions of law with respect to both the real estate company and the partnership and the validity of the City's tax assessments. We shall discuss each of them separately as did the Board.

### The Real Estate Company

The real estate company was a sole proprietorship owned and operated by Samuel Rappaport. Mr. Rappaport testified that the business purpose of the company was "real estate for long-term investment and rental of same." (Vol. II, June 6, 1990, Notes of Testimony, N.T. 76.) SR Management provided management services to the real estate company, including maintaining its books and records, receiving rental checks and managing the properties of the company. Under the terms of the triple net leases, Mr. Rappaport was responsible for structural mainte-

nance and roof repairs, while the tenants were responsible for general maintenance, repairs, taxes and utilities. Tenants were responsible for their proportionate share of real estate taxes, which they sent to SR Management. The real estate company sold a property if it was not generating a satisfactory rental income. The business address of the real estate company was listed as 1211 Arch Street, Philadelphia, on all relevant documents such as leases, rents, sales agreements, and legal notices. (Testimony of Carl Cordek, Controller for Samuel Rappaport Limited Partnership, Vol. II, N.T. 23.) The properties at issue under the assessment were as follows:

1) 1231 Filbert Street, Philadelphia; sold in 1978, proceeds received in 1982;

2) 1632–34 Market Street, Philadelphia; disposed of in anticipation of condemnation in 1982;

3) 306–20 North Broad Street, Philadelphia; sold in 1986 due to insufficient rental income; and

4) 1627–37 Chestnut Street, Philadelphia; sold in 1986 to Rouse and Associates on Mr. Rappaport's belief that Mr. Rouse would convince the City to condemn the property for its use.

---

(Com.Pl.1956), the trial court stated that the "correct principle for deciding the gain question was explained" in that case, to wit:

> May the City impose a net profits tax on gain realized from the sale of real estate which is used in the conduct of a taxable activity? We believe that it may, but only to the extent that the gain realized from the sale results from the taxable activity, and not to the extent that the gain results from [other factors like market conditions that are] unrelated to the taxable activity.

(Trial Court's Opinion, April 23, 1993, p. 2.)

7. The City's Revenue Department published its CPI formula in a November, 1987 Newsletter. The Newsletter states that the formula was devised "to determine taxable gain on the sale of Real Estate when the sale is not part of the 'operation of the business.'" The formula that was established required consideration of:

> the historic cost of the land, building and improvements;
> the traditional "adjusted basis" of the property;
> the appropriate Consumer Price Indices for the years of acquisition and disposition:

the Consumer Price Index for all Urban Consumers, Philadelphia, PA—New Jersey; all items compiled by the U.S. Department of Labor;
> the adjusted basis of the historic cost to be modified to selling year dollars; and
> determining the "economic" gain as the difference between the basis in historic dollars and CPI adjusted dollars.

(City's Brief, Appendix K, p. 3.)

8. The findings of fact for both the partnership and the real estate company are from the Board's first decision dated December 14, 1992. Although the trial court subsequently remanded the matter to the Board by orders dated April 23, 1993, in its second decision, the Board stated that:

> The Findings of Fact for Samuel Rappaport Real Estate and Samuel Rappaport Limited Partnership set forth in the Tax Review Board opinion for Samuel Rappaport et al, dated December 14, 1992, and marked 92–W, are hereby incorporated by reference.

(Tax Review Board Opinion, May 20, 1994, No. 94–E.) However, the conclusions of law with respect to both entities are taken from the Board's second opinion of May 20, 1994.

All of the properties were sold at a gain and the proceeds deposited in the real estate company's general bank account from which additional business purchases and debts were paid.

At the hearings, Reaves C. Lukens, Jr., a real estate appraiser, testified as an expert witness for the real estate company. Mr. Lukens testified that in his opinion, the gain from each of the properties sold was "due to the market conditions in general as opposed to anything specific done by the ownership." (Vol.II, N.T. 139.) The City's auditor for the real estate company, Janice Williams, testified that in calculating the taxable gain, she applied the CPI formula to the total gain realized on each property. Ms. Williams then subtracted this amount from the total gain to determine the amount of the gain that was the result of the real estate company's business activities. (Vol. III, June 13, 1990, N.T. 184-185.) Finally, Philip Brandt, Esquire, staff counsel for the Philadelphia Industrial Development Corporation, testified that the low-interest loans received by Mr. Rappaport through his many business entities, required that the borrower agree to "develop and make improvements, or add something to the property." (Vol. III, N.T. 105.)

The Board concluded that:

1) 'the testimony of Samuel Rappaport made clear that the decisions to buy and sell these properties were made within the business arena as part of the operation of SR Real Estate. The decisions to sell or otherwise dispose of these properties were all made so as to best benefit the company and maximize profits. While it may be that buying and selling properties were not the primary focus of this real estate business, it was an integral part of the development and successful performance of the business'; and

2) the City was to determine the nontaxable portion of the gain using its CPI formula; however, the remaining portion of the gain was taxable as the result of the business activity of the real estate company.

## The Partnership

The partnership owned and operated numerous properties, including two of the properties at issue in this assessment, one located at 919 Levick Street in Philadelphia and the other located in Fairless Hills, Bucks County, Pennsylvania. The stated purpose of the partnership was to "hold, lease, manage or dispose of real estate or personal property, and such other acts as the General Partner deems beneficial to [the] Partnership." (Limited Partnership Certificate, City's Brief, Appendix J./City's Exhibit No. 2.) The partnership used 1211 Arch Street in Philadelphia for purposes of receiving legal notices, leases, sale and purchase agreements and rental receipts. Although the partnership stated that it maintained an office at the Fairless Hills shopping center with a telephone and storage for maintenance supplies for the maintenance staff, the partnership did not produce any licenses or tax returns to establish a Bucks County office or domicile.

The partnership spent considerable management time on the Fairless Hills property due to various maintenance and repair problems. However, the partnership sold both the Levick Street shopping center and the Fairless Hills shopping center as a package deal in 1985 for a substantial gain.

The Board concluded that:

1) the partnership failed to establish that its business activities and business office were in the Fairless Hills shopping center;

2) most if not all of the management activity for the partnership occurred in Philadelphia;

3) the partnership's place of business was 1211 Arch Street in Philadelphia;

4) all of the management activities related to the Levick Street shopping center occurred within the City and therefore all gain realized from the sale of this property was taxable to the extent that it was a result of operational activities of the partnership and not economic factors;

5) the City's CPI formula was to be used to determine the taxable gain from the sale of the Levick Street shopping center;

6) the partnership was forced to spend excessive management time on the Fairless Hills shopping center;

7) a portion of the gain from the sale of the Fairless Hills property is a result of services and activities performed from the Philadelphia office and is therefore taxable by the City; and

8) the City's CPI formula was to be used to determine the portion of the taxable gain from the sale of the Fairless Hills property attributable to the City.

Once again, the taxpayers appealed to the trial court, which then determined that the gains were *unearned* and therefore not taxable. The trial court further found that the sale of the Fairless Hills property was beyond the City's taxing jurisdiction. Accordingly, the trial court granted the taxpayers' appeal. This appeal followed.[9]

### Discussion

■ The City argues that both the real estate company and the partnership were in the real estate business and thus all gains realized by these two entities from the disposition of the six properties constitutes taxable business income. The City argues that like the trustees in *Dunn v. Tax Review Board of Philadelphia*, 67 Pa.Cmwlth. 431, 447 A.2d 691 (1982), *appeal dismissed*, 502 Pa. 429, 466 A.2d 1028 (1983), Mr. Rappaport "purposely acquired, held, leased and disposed of real estate properties ... employ[ing] his management company to collect rents and pay utility bills ... [and] to handle maintenance and repair work." (City's Brief, p. 17.) The City also argues that this Court has stated in both *City of Philadelphia Tax Review Board v. Adams Avenue Associates*, 25 Pa.Cmwlth. 379, 360 A.2d 817 (1976) and *Schorsch v. Tax Review Board*, 49 Pa. Cmwlth. 225, 410 A.2d 1305 (1980), that even though taxpayers do not actively manage the properties and enter into a net lease to shed themselves of their responsibilities as lessors, they do not escape business taxes.

9. Our scope of review is limited to determining whether constitutional rights have been violated; whether an error of law was committed; or whether necessary findings of fact are supported

In addition, the City argues that the trial court's reliance on *Sharps v. Revenue Commissioner*, 10 Pa. D. & C.2d 463 (Com.Pl. 1956) and *Rudofker v. City of Philadelphia*, Memorandum Opinion, January Term 1980, No. 4803 (Phila.1982), is misplaced 1) because the issue in those cases was whether the gain on the sale of real estate was "earned" under the City's net profits tax which imposes a tax only on the earned income; and 2) because neither taxpayer was involved in the real estate business. The City argues first that the business privilege tax, the mercantile tax, and the general business tax, as distinguished from the net profit tax, "are imposed on business income or receipts regardless of whether it is classified as earned or unearned." City's Brief, p. 19–20; *see Bankers Securities Corporation v. School District of Philadelphia*, 188 Pa. Superior Ct. 463, 149 A.2d 545, *aff'd*, 397 Pa. 413, 155 A.2d 835 (1959); *Tax Review Board of the City of Philadelphia v. Brine Corp.*, 414 Pa. 488, 200 A.2d 883 (1964); and *Sun Oil Company v. Tax Review Board*, 417 Pa. 443, 207 A.2d 855 (1965).

Secondly, the City argues that even with respect to the net profits tax, the taxpayers' argument that "market forces" caused the gain and thus the income was "unearned," is irrelevant where the taxpayers are in the business of profiting from the disposition of real estate. Because the taxpayers herein are in the real estate business, their income from the disposition of the six properties at issue was "earned" and therefore fully taxable under the net profits tax. *See Dunn; Quaid.* We agree.

To quote extensively from a case from our sister court:

The word 'earned' as used in this ordinance, according to the Supreme Court in *Breitinger v. City of Philadelphia*, 1950, 363 Pa. 512, 519, 70 A.2d 640, 645, 'is obviously used in a limited sense and not in the generally comprehensive sense in which the word is sometimes used' and means, " 'to gain, get, obtain, or acquire as

by substantial evidence. Section 754(b) of the Administrative Agency Law, 2 Pa.C.S. § 754(b); *Maggio v. Tax Review Board of Philadelphia*, 674 A.2d 755 (Pa.Cmwlth.1996).

the reward of labor or performance of some service.' "

The tax is imposed upon 'active conduct of a money-making occupation and not to the kind of acts done by one not engaged in business but merely conserving his property,' ... and thus profits from real estate, mortgages and securities are not 'earned' within the meaning of the ordinance, ... unless the taxpayer is engaged in the real estate, mortgage or security business.

*Quaid v. Tax Review Board of the City of Philadelphia,* 188 Pa. Superior Ct. 623, 628, 149 A.2d 557, 559 (1959) (citations omitted).

In *Tax Review Board of the City of Philadelphia v. Brine Corporation,* 414 Pa. 488, 200 A.2d 883 (1964), the taxpayer Brine Corporation argued that because it merely held and leased real estate, the receipts therefrom were not taxable since they did not result from the active conduct of a business. Although the Supreme Court did not agree with the City's argument that all income of a business corporation must be business income and thus taxable, it went on to state:

On the other hand, we conclude that simply because a certain type of receipt may be derived as rent from real estate, dividends or interest from securities or gain from the sale of property (i.e. receipts generally referred to as 'unearned') is not itself sufficient reason for holding that such receipts are not derived from the conduct of a business. It is as possible to conduct a business which generates only 'unearned' receipts as it is to conduct an enterprise producing only 'earned' receipts. The test is neither the characterization of the receipt nor the size of the business; rather, it is the nature of the activity producing the receipt.

*Brine,* 200 A.2d at 886. Thereafter, the Superior Court in *Tax Review Board of Philadelphia v. Weiner,* 211 Pa. Superior Ct. 229, 235, 235 A.2d 184, 187 (1967), considered "whether the income derived by appellants from the two commercial buildings constitutes earnings from business activity or whether it amounts to nothing more than passive income." The court, following the Supreme Court's reasoning in *Brine,* concluded:

In the instant case the properties were purchased specifically as business investments. Each appellant received the profits from the rental, and it strongly appears from the record that the sole objective of Jacob Weiner in purchasing the buildings at his retirement was to sustain himself and his wife. They employed professional real estate brokers to manage the properties for them. These brokers were agents of the Weiners, employed for the purpose of carrying out the functions and duties of the owners in the management of the buildings.

. . . .

'Business activity' is basically related to intentional acts of the owners, with primary emphasis on the method and purpose of acquisition. One of the elements of the test mentioned in *Brine,* i.e., 'the overall objectives of the owner,' would seem helpful only in determining whether or not a certain act was purposeful. The conclusion would then be that any quantum of such action, such as deliberate acquisition and the provision of even minimal services, would qualify the activity in question as a business activity and merit the imposition of the tax.

. . . .

In this light, we find that appellants were engaged in 'business activity' within the meaning of the acts and were subject to the Philadelphia Wage and Net Profits Tax and the Philadelphia Mercantile License Tax.

*Weiner,* 211 Pa. Superior Ct. at 237, 235 A.2d at 188–189.

Analyzing the conduct of Mr. Rappaport in operating both the real estate company and the partnership in this light, it is clear that he was at all times actively engaged in a "money-making operation" where the objective was, in his own words, "to buy low and sell high." Using his extensive business acumen, Mr. Rappaport shrewdly and calculatedly, through the real estate company and

the partnership, purchased properties at low prices, sat on them and collected rents while providing management services to the properties through SR Management, and sold them when they reached a peak price in the market. This cannot be considered "conserving" one's property, but the active conduct designed to produce "earned" income. Accordingly, we conclude that the income received by the real estate company and the partnership upon the sale of the six properties at issue is thus fully taxable under the Mercantile License Tax, the General Business Tax, the Net Profits Tax, and the Business Privilege Tax.

■ We now turn to the issue of whether these gains are subject to the inflationary carve-out as set forth in the City's CPI formula. The City argues that where the taxpayers are in the real estate business and the entire business objective was to profit from the appreciation in a property's value caused by market forces, the inflationary carve-out established in the City's CPI formula is not applicable.

In addition, although taxpayers strenuously argue that they have expended no efforts whatsoever in the form of labor, management, and supervision in the operation of any of the buildings to cause the gain, this Court recently concluded that "the rendering of services is no longer necessary to establish that the taxpayer engages in business activity...." *Maggio v. Tax Review Board of Philadelphia,* 674 A.2d 755, 759 (Pa.Cmwlth. 1996) (citations omitted). Moreover, in the City's CPI formula, it is clear that the formula is only to be applied to determine the taxable gain on the sale of real property "when the sale is *not part of the 'operation of the business.'* " (City's Brief, Appendix K, p. 3.) Thus, the taxpayers' argument must be rejected and we conclude that the income received by the taxpayers at issue in this case is not subject to the City's CPI formula.

■ Next, we turn to whether the trial court erred in determining that the City had no jurisdiction to tax the income from the proceeds of the sale of the Fairless Hills shopping center. The taxpayers contend that the gain on the sale of the Fairless Hills property was realized out of the City by its

non-City-resident limited partners and is therefore not taxable by the City. The taxpayers argue that our Supreme Court has twice held that non-city partnership income realized by non-resident partners is not taxable by the city. *Tax Review Board v. D.H. Shapiro Co.,* 409 Pa. 253, 185 A.2d 529 (1962); *Tax Review Board v. Belmont Laboratories Co.,* 392 Pa. 473, 141 A.2d 234 (1958).

Taxpayers, in focusing on the fact that the taxpayer corporation in *Belmont Labs* had its "sole office and place of business" in Philadelphia while its partners were domiciled outside of Philadelphia, ignore the Supreme Court's determination that the profits were not taxable by the City because the services at issue which produced the profits were performed outside of Philadelphia. 392 Pa. at 475, 141 A.2d at 235. Similarly, in *Shapiro,* the partnership, which engaged in the practice of public accounting both in and outside of Philadelphia with its only office in the City, excluded· from its computation of net profits tax due the City, its profits paid to its non-resident partners for work conducted outside Philadelphia. The Supreme Court concluded that the City could not tax these profits and affirmed the trial court's order sustaining Shapiro's appeal of the assessment. 409 Pa. at 260, 185 A.2d at 533.

In Regulation 222 of the City's Net Profits Tax Regulations, is the following pertinent information:

**Section 222. Net Profits of Non–Residents.**

(a) Where Entire Business is Transacted in Philadelphia.

A non-resident individual, partnership, association or other entity, conducting or carrying on any business, profession, enterprise, or other activity, is required to pay the tax on the entire net profits thereof, earned on and after January 1, 1939, if the entire business is conducted or carried on in Philadelphia even though such non-resident may not maintain a store or office in this city.

Non-residents are considered to be 'conducting' a business in Philadelphia if they (1) solicit orders; (2) render services or execute or perform contracts; (3) engage

in manufacturing; (4) make sales. Thus, a farmer, residing in New Jersey, with no place of business in Philadelphia, would be liable for the tax, where he sells his farm products from his truck within the confines of this city. Where the non-resident has a branch, store, or office located in Philadelphia, he shall be considered to be conducting a business to the full extent of all transactions originating or consummated in, by or through such Philadelphia branch, office, or store.

According to this regulation, the City may impose the net profits tax on the taxpayers herein, as non-residents, if their business is conducted wholly in Philadelphia, irrespective of where the taxpayer's "branch, store, or office" is located. The partnership argued that none of the gain it realized from the sale of the Fairless Hills property was a result of services or activities performed in or from Philadelphia. In addition, the partnership argues that its limited partners were both nonresidents and that it maintained an office outside the City in Fairless Hills. However, we agree with the Board's initial determination that the partnership conducted its business from Philadelphia and thus the profit realized by the partnership from the sale of the Fairless Hills property was a result of activities and services performed partially in Philadelphia and therefore taxable by the City. The management of the Fairless Hills property was conducted by SR Management, with its sole place of business in Philadelphia, as an agent for the partnership. All legal notices and rents from or concerning the property were received by SR Management, on behalf of the partnership, in the City. (Testimony of Cordek, Vol. II, N.T. 16–20.) The principal place of business listed on the business tax applications was listed as 1211 Arch Street, Philadelphia. (Testimony of Cindy Gold, City Auditor, Vol III, N.T. 44.) Finally, the sale and settlement for the Fairless Hills property was conducted in Philadelphia where title and proceeds passed hands. (Testimony of Cordek, Vol. II, N.T. 18.) Therefore, it appears that while some of the services were provided outside of the City, a majority of the services were provided from within the City.

In Section 2, paragraph 3, of the First Class City Business Tax Reform Act,[10] the definition of "Net Income" provides:

(3) The collector shall establish rules and regulations and methods of apportionment and allocation and evaluation so that only that part of such net income or net operating loss which is properly attributable and allocable to the doing of business in the city of the first class levying the tax shall be taxed hereunder. The collector may make an apportionment and allocation, with due regard to the nature of the business concerned, on the basis of mileage, the ratio of the taxable receipts of the taxpayer from within the city to the total receipts of the taxpayer, the ratio of the value of the tangible personal and real property of the taxpayer owned or leased and situated in the city levying the tax to the total tangible personal and real property of the taxpayer wherever owned and situated, the ratio of the wages, salaries, commissions and other compensation paid by the taxpayer within the city levying the tax to the total wages, salaries, commissions and other compensation paid by the taxpayer, and any other method or methods of apportionment and allocation, other than the foregoing, calculated to effect a fair and proper apportionment and allocation. . . .

The City's Department of Revenue, accordingly, has devised in Business Privilege Tax Regulation 408, a method of apportioning the net income of the taxpayers herein which is properly attributable to "the doing of business" in Philadelphia. Regulation 408 states that "[e]xcept as otherwise provided, a taxpayer's net income after adjustments and allocation shall be apportioned to Philadelphia in accordance with a formula composed of a property factor, a payroll factor and a receipts factor." Similarly, although the enabling legislation [11] for the Net Profits Tax does not provide a formula for apportionment, the City's Revenue Department, in

10. Act of May 30, 1984, P.L. 345, 53 P.S. § 16182.

11. Act of August 5, 1932, Ex.Sess., P.L. 45, *as amended*, 53 P.S. §§ 15971—15976.

Income Tax Regulation 222(c) and (d) provides for allocation where the taxpayer has his place of business both inside and outside of Philadelphia and a special allocation "[w]here it is impossible to allocate with certainty the net profits subject to tax...."

We conclude, therefore, that a part, but not all of the gain from the sale of the Fairless Hills property is subject to taxation by the City and we remand the matter for application of the proper formulas as set forth above.

■ Finally, we reach the issue of whether any or all of the penalties and interest should be abated. The City argues that if this Court affirms the Board's first decision, then it should not grant any abatement of interest or penalty. The taxpayers assert that all of the interest and penalties should be abated because they set forth a meritorious argument both before the Board and before this Court on appeal. We are in partial agreement with the taxpayers. Because we conclude that they had a valid and meritorious position in taking this appeal from the assessments at issue, we believe that the penalty assessed by the Board should be abated. However, we do not believe that the payment of interest should be excused.

Accordingly, for all of the foregoing reasons, we reverse the order of the trial court and remand the matter with instructions that the trial court remand the matter to the Board for recalculation of the taxes due without reference to the City's CPI formula and with directions to apply the apportionment formulas to the gain realized by the sale of the Fairless Hills property only and for calculation of the interest due on the unpaid taxes.

### ORDER

AND NOW, this 4th day of September, 1996, the order of the Court of Common Pleas of Philadelphia County dated September 7, 1994 is hereby reversed and this matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.