## Price, Appellant, v. Tax Review Board.

Argued May 1, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*James L. Price,* with him *Richman, Price & Jamieson,* for appellants.

*Leonard B. Rosenthal,* Assistant City Solicitor, with him *James L. Stern,* Deputy City Solicitor, and *David. Berger,* City Solicitor, for board, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 8, 1963:
Appellants appeal from the order of the court below dismissing an appeal by them from a decision of

the Tax Review Board of the City of Philadelphia. The board, after a hearing, dismissed appellants' petition to review a Philadelphia mercantile license tax assessment for the years 1953 to 1959, inclusive. The appeal is before this Court on "broad certiorari", and it is therefore our duty to determine whether the findings of fact of the court below are sustained by competent evidence and, if so, whether it arrived at a legally correct conclusion. *Philadelphia School District v. Parent Metal Products, Inc.,* 402 Pa. 361, 167 A. 2d 257 (1961) ; *Philadelphia School District v. Rosenberg,* 402 Pa. 365, 167 A. 2d 259 (1961) ; *Bell Appeal,* 396 Pa. 592, 152 A. 2d 731 (1959).

The facts sustained by the record are these: Mrs. Price and her brothers, the appellants, are the owners of real estate situate at 6301 Overbrook Avenue in Philadelphia. They own this property as tenants in common, having acquired it by gift and/or devise from their parents. Mrs. Price resides in Montgomery County and her brothers reside in Los Angeles, California and Madison, Wisconsin, respectively, both being engaged in the practice of medicine. The appellants have formed a partnership for the operation of the real estate, known as Drexel Apartments and, for federal income tax purposes, file a partnership return under that name.

6301 Overbrook Avenue is a single building, divided into three sections with a common basement. Each section is four stories high and contains its own self-service elevator. The two outside sections have eight apartments each. The interior section has ten, the extra two arising from a division, made some time ago, of two of the then existing larger apartments into four smaller units. Heat and hot and cold water are supplied to all of the apartments and all are rented unfurnished. A janitor and a helper are employed full-time and their principal functions are to care for the heat-

ing system, cut the grass, clean snow from the sidewalks, clean the halls in the buildings and make minor repairs. Checks for rent are left by the tenants in the janitor's mailbox. He then turns them over to Mrs. Price on the occasion of her weekly visits, at which time she also picks up any bills that may have been sent to the building. These weekly visits are of approximately one hour duration and constitute the total time spent by any of the appellants in the management of the property, the other appellants residing out of the Commonwealth and not having been near the property in at least five years. No electricity or gas is supplied to the apartments, except for the four smaller apartments mentioned heretofore. No maid service is supplied to the tenants and they pick up their own mail from individual mailboxes located on the ground floor of the building. There is no central telephone switchboard serving the building, nor is there a doorman. The basement of the building contains laundry tubs which are available for the use of the tenants without charge, and each of the tenants, at the time of the hearing before the tax review board, had a locker storage facility in the basement, approximately three feet by four feet, individually locked, the individual tenants owning the locks and keys. So far as the record discloses, none of the appellants has other income-producing real estate in Philadelphia and none is engaged in the buying and selling of real estate.

From these facts we must determine whether the mercantile license tax of the City of Philadelphia is applicable to the gross receipts received by the appellants as rental for the apartments in question. The tax under consideration is contained in The Philadelphia Code, Section 19-1001 et seq. The tax ordinance, in its pertinent parts, provides that: "(1) Every person engaging in any of the following businesses in the City shall, in addition to paying a license fee as here-

in provided, pay an annual mercantile license tax for the license year 1953 and annually thereafter at the rate set forth: . . . (e) All other persons *engaged in business* at the rate of 3 mills on each dollar of the annual gross volume of business transacted." (Emphasis supplied).

The word business is defined in the ordinance as: "(1) The carrying on or exercising for gain or profit within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business, including but not limited to manufacturers, brokers, wholesale dealers or wholesale vendors, retail dealers or retail vendors."

From the above quoted sections of the tax ordinance, it may be seen that the narrow question that must be decided on this appeal is whether a rental of apartments under the facts hereinbefore set forth constitutes a "business".

In considering the issue raised on this appeal we are bound by the well established principles that no municipality may levy taxes, general or special, unless the power be plainly and unmistakably conferred, and that tax statutes should receive strict construction with all doubts being resolved against the taxing body. *Tax Review Board v. D. II. Shapiro Co.,* 409 Pa. 253, 185 A. 2d 529 (1962) ; *Tax Review Board v. Belmont Laboratories,* 392 Pa. 473, 141 A. 2d 234 (1958) ; *Paper Products Co. v. Pittsburgh,* 391 Pa. 87, 137 A. 2d 253 (1958) ; *Breitinger v. Philadelphia,* 363 Pa. 512, 70 A. 2d 640 (1950), and cases cited therein.

There is no question that the Sterling Act, Act of August 5, 1932, P. L. 45, 53 P.S. §15971, empowers the city to levy a mercantile tax; the question is whether the tax levied is applicable to the activity of appellants. The board and the court below held that appellants were subject to the tax because they were providing

services in order to secure the rental income, thereby engaging in a "business" as defined in the ordinance.

The tax involved is a "mercantile" tax, but it clearly involves a tax on activities which would not ordinarily be considered "mercantile". That term is defined by Webster's New International Dictionary, 2d Edition as "of or pertaining to merchants, or the business of merchants; characteristic of, or befitting a merchant; having to do with, or engaged in trade"; and in Black's Law Dictionary, 4th Edition as "Of, pertaining to, or characteristic of, merchants, or the business of merchants; having to do with trade or commerce or the business of buying and selling merchandise;". In addition to these activities, the City Council included specifically, "manufacturing, professions, occupations, trades, vocations and commercial activities in the City of Philadelphia". It did not specifically include rental income from real estate and, unless appellants' activity clearly is within the ordinance, no tax liability under this ordinance should attach to it.

In construing the Philadelphia net profits tax ordinance in *Breitinger v. Philadelphia,* supra, we said, at page 521, "The City's definition of 'business' has been quoted from the ordinance and expressly includes both words 'profession' and 'activity.' The application of the rule *ejusdem generis* to the context 'businesses, professions, or other activities' restricts the meaning that may be given to the word 'activities' by limiting it to what is included in the words 'businesses and professions.' And this accords with section 33 of the Statutory Construction Act of May 28, 1937, P.L. 1019, 46 PS 533, providing: 'General words shall be construed to take their meanings and be restricted by preceding particular words . . .' The ordinance makes a distinction between net profits earned, as taxable income, and net profits not taxable because not gain resulting from professional or business activity as de-

fined in the ordinance. The use of the words 'operation' and 'net gain' seem clearly to refer to a taxable's active conduct of a money-making occupation and not to the kind of acts done by one not engaged in business but merely conserving his property." We believe that the same reasoning applies to the tax here in question. The net profits tax ordinance taxes "the net profits of any business, profession or enterprise carried on by any person as owner or proprietor . . .". The mercantile tax ordinance taxes "the carrying on or exercising for gain or profit within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business . . .". Under either ordinance, a distinction must be made between "a taxable's active conduct of a money-making occupation" and "acts done by one not engaged in business but merely conserving his property".

We conclude that the acts and services relied on by appellee to show that appellants are engaged in "business" are insufficient to support such a conclusion. We perceive that these acts and services are designed primarily for the conservation of the property and any benefits to the tenants are merely incidental. The thing most heavily relied on by appellee is the employment of a janitor and helper. These employees render no service, as such, to the tenants. Their presence is required to service a pressure, steam heating system, which, if unattended, obviously could become a source of damage to the property, to say nothing of the legal liability of the owners in the event of an accident caused by boiler explosion or similar mishap. The cleaning of halls and shoveling of snow is no more than is required of owners of apartment buildings to prevent harm to tenants and the public, which might arise from a failure to perform these functions. Making of minor repairs is clearly necessary for preservation of

the property. Nor does the presence of a self-service elevator in each section of the building constitute providing service of such nature as would put appellants in "business". The elevators are, after all, self-service. We could hardly say that providing a stairway for travel between floors of a four story building was providing service. In our view, a self-service elevator is nothing more than a more convenient form of stairway. Laundry tubs and storage facilities are normal adjuncts of virtually all residential facilities, and their presence for the optional use of tenants cannot convert an investment into a business. Neither can we say that the provision of gas and electricity to four of twenty-six apartments changes the character of this investment to a business. It is true that appellants have chosen to form a partnership and receive and report their income from this property as such. There may be many reasons for their having done so and we will not conjecture what they might have been. Suffice it to say, that this fact, either alone or in conjunction with all the others, does not make a "business" of the rental of these apartments.

The court below relies heavily on *Penna. Co., v. Phila.*, 346 Pa. 406, 31 A. 2d 137 (1943), as authority for the proposition that appellants are engaged in a business by virtue of their providing services. That case arose under the income tax ordinance of the City, and did hold that real estate income of the taxpayer was taxable since the income was derived from an activity involving the employment of labor, active management and supervisory efforts and various services rendered. There, however, the problem was primarily whether the taxpayer was liable for the tax, in view of the fact that it held the real estate as trustee and/or mortgagee in possession. We held that the method of acquisition or period of operation of the real estate was immaterial, the question of services rendered being a

subsidiary issue. In any event, the taxpayer in *Penna. Co.,* operated considerable real estate, such as: a four-story apartment building containing two units of fifty-two apartments each; an office building of five stories and seventeen offices; a loft building of six stories devoted to manufacturing and storage; and a number of other commercial and residential structures. The "services" rendered there are distinguishable from those in the case at bar, as is the situation of the operator of large real estate holdings from that of the owners of a single residential investment. That is not to say, however, that a single residential investment could not, under a proper state of facts, be taxable under the mercantile tax ordinance. We say, merely, that the facts of the instant case, at least, raise serious doubts as to whether appellants are engaged in a business, within the intendment of the ordinance, and these doubts must be resolved in favor of the taxpayers. *Paper Products Co. v. Pittsburgh,* supra.

Order reversed.

Mr. Justice Cohen dissents.