# Tax Review Board *v.* Brine Corporation, Appellant.

Argued March 17, 1964.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Roger G. White,* with him *Smyth, Straub & Thistle,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *James L. Stern,* Second Deputy City Solicitor, *Matthew W. Bullock, Jr.,* Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for tax review board, appellee.

Opinion by Mr. Justice Cohen, May 27, 1964:

Appellant, Brine Corporation (Brine) was organized January 17, 1944, under the Pennsylvania Business Corporation Law. Its stated purposes are: "Parking, storing, servicing and repairing automobiles and motor vehicles, and the sale of gasoline, oils, tires, automobile accessories, etc.; and the buying, leasing, acquiring, holding and selling buildings and real estate for such purposes, and the transaction of all and any other business that may be necessary or incidental thereto."

Between 1944 and 1956 Brine acquired eleven properties: seven parking lots, two closed parking garages and two commercial buildings. The seven parking lots and one of the two parking garages were leased to two affiliated corporations which, apparently, operated them. The other parking garage was leased to an unaffiliated corporation, and the two commercial buildings were leased through a rental agent to various tenants not connected with Brine. Brine rendered no services to any of the tenants, nor did it manage any of the properties. It had no employees, but two officers each received $1500 for their services in providing corporate management.

All of Brine's income was derived from the rents on the properties mentioned and from dividends from 1,800 shares of Atlantic Refining Company stock. It filed and paid mercantile license tax to the City of Philadelphia on its gross receipts for the years 1953 through 1956, inclusive; but in 1958 it filed petitions for refund covering most[1] of the tax paid, alleging that the receipts constituted "passive income" from investments and as such were not subject to tax. After the Revenue Commissioner of the City denied the petitions, Brine appealed to the City's Tax Review Board

---

[1] The remainder of the receipts were similar but were erroneously omitted from the refund requests.

which affirmed the Commissioner on the ground that Brine's receipts were derived "from precisely the activities for which the corporations were organized under the Business Corporation Law," and that the situation was governed by *Bankers Securities Corporation v. Philadelphia School District,* 16 Pa. D. & C. 2d 248 (1958), aff'd per curiam, 188 Pa. Superior Ct. 463, 149 A. 2d 545 (1959), aff'd per curiam, 397 Pa. 413, 155 A. 2d 835 (1959).

Brine thereupon appealed to the court of common pleas which dismissed the appeal and affirmed the decision of the Tax Review Board reasoning that since Brine "was incorporated for the purpose of owning and leasing certain real estate holdings and deriving income therefrom" and did in fact so derive its income, these receipts were taxable. This appeal followed.

Pursuant to power granted it by State statute[2] the City of Philadelphia in 1952 enacted an ordinance imposing a mercantile license tax.[3] In §19-1003(e) the ordinance imposes on "persons engaged in business" a tax at the rate of 3 mills on each dollar of the annual gross volume of business transacted. The phrase "gross volume of business" is defined as the "gross receipts of a business;" and "gross receipts" is defined as "cash, credits and property of any kind or nature . . . from any business." Obviously, the key word is "business", and this word is defined in relevant part, as follows: "The carrying on or exercising for gain or profit within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business . . . ."

Brine contends that it merely holds and leases real estate and that the receipts therefrom are not taxable

---

[2] Act of August 5, 1932, P. L. 45, §1, 53 P.S. §15971.

[3] The Philadelphia Code, §19-1000 (1956).

since they do not result from the active conduct of a business. The City, on the other hand, says (1) Brine was organized, inter alia, to acquire and lease real estate and, in so doing, is carrying on a business for which it was organized and (2) a business corporation by its very nature is incapable of receiving income from any source other than the conduct of business. In either view, says the City, Brine is taxable.

In *A. H. Geuting Company v. City of Philadelphia,* 1 Pa. D. & C. 2d 341 (1954), the Court of Common Pleas of Philadelphia County held that the corporation there involved was not engaged in "business" as defined in the Mercantile License Tax Ordinance and, hence, was not subject to the mercantile license tax. The corporation had, in prior years, operated a shoe store in a building owned by it; but in 1952 it sold its business and leased the real estate to the purchaser. Thereafter, it did nothing but own the building, receive the rent and pay the property taxes and fire insurance on the building. The court equated the definition of "business" in the Mercantile License Tax Ordinance with the definition of "business" in the Philadelphia Net Profits Tax Ordinance; and finding, under our decisions in *Breitinger v. Philadelphia,* 363 Pa. 512, 70 A. 2d 640 (1950) ; *Murray v. Philadelphia,* 363 Pa. 524, 70 A. 2d 647 (1950) ; and *Pennsylvania Company v. Philadelphia,* 346 Pa. 406, 31 A. 2d 137 (1943), a requirement that "business" within the contemplation of the latter ordinance be something more than ownership of property and receipt of income therefrom, it held that Geuting was not engaged in "business" for mercantile license tax purposes.

Recently, this Court had occasion to consider a somewhat similar situation. In *Price v. Tax Review Board,* 409 Pa. 479, 187 A. 2d 280 (1963), we dealt with the City's attempt to collect mercantile license tax from a partnership which received rentals from

one piece of real estate which the partners had acquired by gift and/or devise. Minor services were performed in connection with this ownership. In language clearly approving the approach taken by the court in the *Geuting* case, we affirmed the lack of any distinction between the requirements in the Net Profits Tax Ordinance and Mercantile License Tax Ordinance relating to the active conduct of a business and held that the partnership was not engaged in any business. We did point out, however, that the situation differed when extensive management services were provided or when the "operators of large real estate holdings" were involved.

The Board here relies strongly on *Bankers Securities Corp. v. Philadelphia School District,* supra, which involved the general business tax imposed by the Act of May 23, 1949, P. L. 1669, as amended, 24 P.S. §§584.1-584.12. The definition of "business" in that Act is substantially the same as in the Mercantile License Tax Ordinance. The taxpayer there realized receipts from numerous sources, including the operation of a department store, four hotels and other properties, dividends from securities and gains from the sale of securities. It attempted to exclude the dividends and gains in computing its tax, but the court held that its activities in toto constituted a "business" which did not, under the circumstances, permit the segregation of the investment segment. The Board here (and the court below) cites the *Bankers Securities Corp.* case for the principle that all income of a business corporation must be business income, but we fail to perceive that the case went that far. It held only that all of the income received was derived, in fact, from business activities and, thus, was taxable.

In the present case, as well, we see no reason to completely adopt the Board's view since, as a matter of law, we cannot reach a conclusion that a corpora-

tion can have no receipts except from the conduct of a business. On the other hand, we conclude that simply because a certain type of receipt may be derived as rent from real estate, dividends or interest from securities or gain from the sale of property (i.e., receipts generally referred to as "unearned") is not itself sufficient reason for holding that such receipts are not derived from the conduct of a business. It is as possible to conduct a business which generates only "unearned" receipts as it is to conduct an enterprise producing only "earned" receipts. The test is neither the characterization of the receipt nor the size of the business; rather, it is the nature of the activity producing the receipt.

Thus, a person may purchase one piece of real estate and actively engage in renting and managing it. He certainly would be liable for mercantile tax. Another person may inherit ten pieces of rent-producing real estate with regard to which he does nothing but collect net rents. He would not be liable for mercantile license tax. In *Geuting,* supra, the company did nothing but conserve a piece of real estate retained by it after selling its business; while in the *Bankers Securities Corp.* case, supra, the facts indicated that the investment aspect of the company's operation was an integral part of its business. These differences in how the property was acquired or circumstances under which it is retained, in how it is used, in services performed by way of management, and in the overall objectives of the owner are the differences which lead to tax in one case and not in the other.[4]

Thus, in the case before us, although it did not manage its properties, Brine actively engaged in the acquisition and leasing of properties after its formation. While both the Board and the court below state

---

[4] To the extent we indicated otherwise in *Pennsylvania Company v. Philadelphia*, supra, we disapprove of that opinion.

that "buying and leasing real estate" or "owning and leasing real estate" is the purpose for which Brine was incorporated and thus Brine must be engaged in a business, we do not rest our decision on that basis although it is a factor that merits consideration. Moreover, the purpose clause of Brine's articles of incorporation indicates clearly that its activities with regard to real estate are to be conducted with reference to the first stated purpose of conducting parking and garage activities; and it is doubtful that all its real estate acquisitions and leasings so qualify. In any event the language of the charter does not control tax consequences. Accord, *Jefferson Grocery Company of Pittsburgh v. Pittsburgh School District,* 394 Pa. 110, 145 A. 2d 720 (1958). Brine's activities constitute a business within the meaning of the Mercantile License Tax Ordinance, and its refund petitions were properly denied.

Order affirmed.

Mr. Chief Justice BELL dissents.