## Philadelphia Tax Review Board *v.* Weiner et ux., Appellants.

230

Argued September 11, 1967.  Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

*Robert J. Spiegel,* with him *Gratz & Spiegel,* for appellants.

*Levy Anderson,* First Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for Tax Review Board, appellee.

OPINION BY SPAULDING, J., November 16, 1967:

This is an appeal by Jacob and Rose Weiner, husband and wife, from the decision of the Court of Common Pleas No. 3 of Philadelphia County denying their companion claims for refund of net profit taxes and mercantile license taxes. Claimants contend that the interest of each of them (Rose Weiner, a ½ interest in the property at 134-42 North 13th Street; Jacob Weiner, a ½ interest in the property at 511 North Broad Street) is merely an investment producing passive income not taxable under either the Philadelphia Wage and Net Profits Tax or the Philadelphia Mercantile License Tax.

The Philadelphia Wage and Net Profits Tax was first enacted in 1939.[1] It provided, inter alia, for an annual tax for general revenue purposes on net profits designated as "the net gain from the operation of a business . . ." Philadelphia Code §19-1502. The Philadelphia Mercantile License Tax ordinance became effective January 1, 1953.[2] It provides in part: "Every person engaging in any of the following businesses in the City shall, in addition to paying a license fee as herein provided, pay an annual mercantile license tax for the license year 1953 and annually thereafter at the rate set forth. . . ." "Business," in pertinent part,

---

[1] Amendments 1942, '46, '48, '51, '52, '53, '54.
[2] Amendments 1953, '54.

is designated as the carrying on or exercising for gain or profit within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business, including but not limited to manufacturers, brokers, wholesale dealers or wholesale vendors, retail dealers or retail vendors. Philadelphia Code §19-1001.[3]

## Rose Weiner

, In 1959, appellant Rose Weiner was audited by the Department of Collections of Philadelphia. As a result, assessments were imposed for failure to pay net profits tax from 1944 through 1957, and mercantile license tax from 1953 through 1958. In August, 1959 appeals were filed with the Tax Review Board of Philadelphia contesting these assessments. In March, 1960 these appeals were withdrawn and in March, 1961 appellant made payments of all taxes for the above years. In May, 1961 she filed a petition with the board for waiver of interest and penalties as a result of which, on October 9, 1961, the board entered an order abating the penalties in part provided the balance due (not included in the original assessment or payment of March, 1961) was paid in accordance with a new bill to be rendered by the Department of Collections. Payment of the taxes, the remaining interest and penalties and taxes for later years was made on December 12, 1961. In July, 1963, wife-appellant filed a petition for refund of net profits taxes paid from 1944 through 1961, and for refund of mercantile license taxes paid from 1953 through 1962.

---

[3] For the purposes of this case, the definition of business under both tax ordinances is identical. See *Price v. Tax Review Board*, 409 Pa. 479, 187 A. 2d 280 (1963).

## Jacob Weiner

In February, 1960 appellant Jacob Weiner was audited which resulted in the imposition of assessments for net profits taxes from 1945 through 1958 and for mercantile license taxes from 1953 through 1959. All taxes were paid on March 13, 1961. In May of that same year he filed appeals with the board for waiver of interest and penalties, which the board abated in part, provided the balance due (not included in the original assessment or payment of March, 1961) was paid in accordance with a new bill to be rendered by the Department of Collections. Payment of the taxes, the remaining interest and penalties and taxes for later years was made on December 12, 1961. In July, 1963 husband-appellant filed a petition for refund of net profits taxes paid from 1945 through 1958, and for refund of mercantile license taxes paid from 1953 through 1962.

The petitions of both Rose Weiner and Jacob Weiner were denied by the board, and the decision was affirmed by the court below. In sustaining the denial the court followed the reasoning of the board and disposed of the cases solely on the procedural grounds that, ". . . petitioners' actions in foregoing their rights to prosecute appeal procedures and their actions in withdrawing their appeal procedures coupled with subsequent presentation of petitions for abatement of interest and penalties constituted a waiver and surrender of their appeal rights. The taxpayers further, in effect, made a compromise settlement with the Law Department. The Law Department could have appealed the decision of the Tax Review Board, but it did not do so and it thereby waived its claim for the balance of the monies conditionally forgiven by the Board. The taxpayers accepted and ratified and became bound by the Board's action when they each paid the balance

due and took no further steps adversely to the Board's decision."[4]

In response, appellants note that Jacob Weiner had never filed an appeal from the original assessments and consequently could not "withdraw" anything. As to Rose Weiner, appellants assert that the mere withdrawal of a petition without more does not constitute a waiver. They rely on the Philadelphia Code which in part provides: "The Department of Collections may grant a refund, in whole or in part upon determination that a tax . . . has been paid under mistake of fact or law or under an invalid law."[5]

The fact that appellants did not pay under protest is not a bar to appeal. We are aware of no requirement for protest in the Philadelphia ordinances or regulations which must be satisfied before a refund petition will be considered. On the contrary, appellants cite an opinion by the then City Solicitor Honorable Abraham L. Freedman issued on March 24, 1954 to the effect that a refund should be granted where proper, without regard to whether payment had been made under protest.[6]

In light of the total lack of precedent establishing a waiver, coupled with the general reluctance of courts to impose a relinquishment of a known right absent a showing of clear and understanding waiver, we find none in the instant case. Nor can we agree that appellants "in effect made a compromise settlement." The only evidence on this question is a statement made during the hearing by the board chairman: "We acted upon the basis the taxpayer having paid the tax, we granted some relief." However neither the board opinion nor the record disclose any indication of an agree-

---

[4] Record, 76a.

[5] Philadelphia Code §19-1703.

[6] Opinion No. 109.

ment, written or oral, or any understanding, express or implied, that appellants intended to abandon rights of appeal. Without such a showing we must conclude that there was no surrender.

On the merits the sole issue is whether the income derived by appellants from the two commercial buildings constitutes earnings from business activity or whether it amounts to nothing more than passive income.

Both parties place primary reliance on the leading case of *Tax Review Board v. Brine Corp.*, 414 Pa. 488, 200 A. 2d 883 (1964). Brine was a corporation with the stated purposes of: "Parking, storing, servicing and repairing automobiles and motor vehicles, and the sale of gasoline, oils, tires . . . etc., and buying . . . buildings and real estate for such purposes . . . ." Over a period of years Brine acquired eleven commercial properties and leased them through a rental agent to various tenants. Brine rendered no services to any of the tenants, nor did it manage any of the properties. In holding Brine subject to the Mercantile License Tax the court did not adopt the board's view that all income of a business corporation must be business income. (at 493-494) The court commented, "On the other hand, we conclude that simply because a certain type of receipt may be derived as rent from real estate, dividends or interest from securities or gain from the sale of property (i.e., receipts generally referred to as 'unearned') is not itself sufficient reason for holding that such receipts are not derived from the conduct of a business. It is as possible to conduct a business which generates only 'unearned' receipts as it is to conduct an enterprise producing only 'earned' receipts. *The test is neither the characterization of the receipt nor the size of the business; rather, it is the nature of the activity producing the receipt.*" (at 494) (Emphasis added.) The court, in holding the imposition of the

tax. proper, noted that although Brine did not manage its properties, it actively engaged in the acquisition and leasing of them after its formation.

In the instant case it is undisputed that Jacob Weiner acquired ownership interests in the properties by purchase, and, through a rental agent, leased them. The possible importance of the fact that the Weiners own in total only two one-half interests in the buildings is directly negated by *Brine*: "The test is . . . [not] . . . the size of the business." According to *Brine* we must look to the "nature of the activity producing the receipt," and the nature of such activity here is identical to that in *Brine*. In addition, "how the property was acquired or circumstances under which it is retained, in how it is used, in services performed by way of management, and in the overall objectives of the owner" (at 494) buttress the conclusion that in these relevant respects the two cases are analogous.

In *Kungsgaten, Inc. v. Philadelphia*, 206 Pa. Superior Ct. 343, 213 A. 2d 90 (1965), this court held that rental receipts from one high rise apartment building owned by taxpayers did not constitute income subject to the mercantile license tax since the taxpayer owned only a single building, leased it to an affiliated corporation on a net lease basis and rendered no services to the tenants. This decision was reversed per curiam by the Supreme Court. *Kungsgaten, Inc. v. Philadelphia*, 422 Pa. 209, 220 A. 2d 803 (1966). Although a per curiam opinion is of limited precedential value, it may be inferred that the "nature of the activity" in *Kungsgaten* was identical to that in *Brine*, the only distinction being the "size of the business," admittedly not the relevant test.

In *Price v. Tax Review Board, supra*, receipts from one apartment building owned by two brothers and a sister as tenants in common who had nothing to do

with the management or operation of the property, and provided no services to the tenants, were held not subject to the mercantile license tax. This is distinguishable from both *Brine* and *Kungsgaten*. The acquisition of the Price property was through gift and/or devise, by virtue of which the owners were viewed as fortuitous owners merely conserving their property. As stated there by the court, "Under either ordinance, [net profits tax and mercantile tax] a distinction must be made between 'a taxable's active conduct of a money-making occupation' and 'acts done by one not engaged in business but merely conserving his property.'" (at 485)

In the instant case the properties were purchased specifically as business investments. Each appellant received the profits from the rental, and it strongly appears from the record that the sole objective of Jacob Weiner in purchasing the buildings at his retirement was to sustain himself and his wife. They employed professional real estate brokers to manage the properties for them. These brokers were agents of the Weiners, employed for the purpose of carrying out the functions and duties of the owners in the management of the buildings. One of their agents for the 13th Street building stated, "There are a myriad of things connected with managing buildings. We pay all bills, supervise all repairs, hire and fire help. . . . There may have been something our men couldn't handle and we would have brought in outside labor."[7]

"Business activity" is basically related to intentional acts of the owners, with primary emphasis on the method and purpose of acquisition. One of the elements of the test mentioned in *Brine*, i.e., "the overall

---

[7] Record 48a, 50a. There was evidence that identical services were provided by the broker for the Broad Street property. Record, 41a, 42a. In addition, the payroll of the Broad Street property for the year 1961 amounted to $14,931.30. Record, 57a.

objectives of the owner," would seem helpful only in determining whether or not a certain act was purposeful. The conclusion would then be that any quantum of such action, such as deliberate acquisition and the provision of even minimal services, would qualify the activity in question as a business activity and merit the imposition of the tax. *Price* is consistent as meaning that a bare minimum of services can be negated by the fact that the initial acquisition was not itself voluntary or purposeful.

In this light, we find that appellants were engaged in "business activity" within the meaning of the acts and were subject to the Philadelphia Wage and Net Profits Tax and the Philadelphia Mercantile License Tax.

Decision affirmed.