Israel Oseroff, Appellant *v.* City of Pittsburgh et al., Appellees.

Argued October 7, 1982, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Howard M. Alex*, with him *David Hoffman, Citron, Hoffman & Alex, P.C.*, for appellant.

*Grace S. Harris*, Assistant City Solicitor, with her *Dante R. Pellegrini*, for appellee, City of Pittsburgh.

*David H. Dille*, with him *Robert J. Stefanko*, for appellees, The Board of Public Education of the School District of Pittsburgh.

OPINION BY JUDGE CRAIG, December 9, 1982:

Taxpayer Israel Oseroff appeals the order of the Court of Common Pleas of Allegheny County which dismissed his appeal from the City of Pittsburgh's assessment of taxes under the city's business privilege (gross receipts) and earned income (net profits) tax ordinances and the Pittsburgh School District's assessment of taxes under its earned income tax ordinance.

Mr. Oseroff operated a manufacturing business in a building which was condemned for urban renewal in 1964. In 1966, when he was seventy-six years old, the

taxpayer invested his compensation from the condemnation by purchasing another building located in Pittsburgh.

Since he acquired the second building, Mr. Oseroff has rented it continuously to the same tenant, under a net lease arrangement. The common pleas court found that Mr. Oseroff negotiates the lease, pays the real estate taxes and utilities for the property, has purchased insurance coverage on the property and has made repairs to the building's air conditioner, roof, elevator, electrical and plumbing systems. However, Mr. Oseroff provides no services to the tenant.

Mr. Oseroff has never filed net profits or gross receipts tax returns with the city or net profits tax returns with the school district. Pursuant to a treasurer's audit in 1980, the city imposed deficiency assessments against Mr. Oseroff, based on his rental income from the property, for earned income taxes, totalling $369.49, for the tax years from 1969 through 1972 and from 1976 through 1978,[1] and for gross receipts taxes, totalling $830.46, for the tax years from 1969 through 1979.[2] The school district has imposed a deficiency assessment of $528.71 against Mr. Oseroff, also based on his rental income, for earned income taxes[3] for the tax years 1969 through 1979.

We must decide whether the rent that Mr. Oseroff received from the second property is subject to the city's taxes on net profits and gross receipts and the school district's tax on net profits.

---

[1] The city assessed earned income taxes for tax years 1969 through 1972 pursuant to city ordinance No. 567 of 1966 and earned income taxes for tax years 1976 through 1978 pursuant to city ordinance No. 839, codified at Pittsburgh Code of Ordinances, Chapter 245.

[2] The city assessed these taxes pursuant to city ordinance No. 675 of 1968, *as amended*.

[3] The school district assessed these taxes pursuant to its ordinance No. 675 of 1968.

Emphasizing that he acquired the rental property primarily to avoid federal income tax on his compensation for the condemned property and that he performs no direct services for the tenant, Mr. Oseroff contends that he is not engaged in "business" within the meaning of the tax ordinances here[4] and that, under *Breitinger v. City of Philadelphia*, 363 Pa. 512, 70 A.2d 640 (1950), his rental income is not "earned" and hence not subject to the taxes.

The taxpayer in *Breitinger* acquired some of his rental properties by inheritance and others by purchase; he employed real estate agents who arranged for necessary repairs and a janitor who serviced some stores and garages; and he furnished electricity to garages he rented, but provided no other services to his tenants. Interpreting the Philadelphia net profits tax ordinance, which is similar to the three ordinances here,[5] the Supreme Court, *id.* at 521, 70 A.2d at 645, held that:

---

[4] Under the Pittsburgh Code of Ordinances, Section 245.02(a) imposes the city's earned income tax on the "[n]et profits of any business, profession or enterprise" and Section 245.01 defines "business" as "[a]n enterprise, activity, profession or any other undertaking of an unincorporated nature conducted for profit or ordinarily conducted for profit" and "net profit" as "net income from the operation of a business, profession, or other activity."

The citys business privilege tax on the gross receipts of businesses is imposed on every person engaged in business within the city. Section 243.01(a) of the Pittsburgh Code of Ordinances defines "business" as "[c]arrying on or exercising whether for gain or profit or otherwise . . . any . . . business . . . or commercial activity. . . ."

Under the school district's earned income tax, levied pursuant to the Act of August 24, 1961, P.L. 1135, No. 508, *as amended*, 24 P.S. §§588.1-588.12 "business" is defined as "[a]n enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit. . . ."

[5] Because we have found no case law interpreting the Pittsburgh city and school district ordinances which help us to decide this case, we have looked, as did the parties and the common pleas

> The ordinance makes a distinction between net profits earned, as taxable income, and net profits not taxable because not gain resulting from professional or business activity as defined in the ordinance. The use of the words "operation" and "net gain" seem clearly to refer to a taxable's active conduct of a money-making occupation and not to the kind of acts done by one not engaged in business but merely conserving his property.

The court decided that the taxpayer was not liable for tax on any of his rental income because that income was not "earned" within the meaning of the ordinance.

We agree with trial court Judge SILVESTRI's thoughtful opinion that *Breitinger* has been eroded by the subsequent approach of the Supreme Court as followed by this court and the Superior Court.

In *Tax Review Board v. Brine Corporation,* 414 Pa. 488, 200 A.2d 883 (1964), the Supreme Court said that the differences which lead to tax liability for net income or gross receipts from rental property in one case and not in the other are:

> . . . differences in how the property was acquired or circumstances under which it is retained, in how it is used, in services performed by way of management, and in the overall objectives of the owner. . . .

Applying this test, the court there decided that the corporate taxpayer had engaged in the business of

court, to cases interpreting the Philadelphia ordinance which taxes net profits of "businesses, professions or other activities" defining "business" as "[a]n enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit" . . . and "net profits" as "[t]he net gain from the operation of a business . . . or enterprise . . ."

leasing and was liable for the tax even though the corporation rendered no services to any of its tenants and did not manage the properties, leasing them through real estate agents.

In *Philadelphia Tax Review Board v. Weiner,* 211 Pa. Superior Ct. 229, 235 A.2d 184 (1967), the taxpayers purchased rental properties as investments with the sole objective of providing income for their retirement and they employed professional real estate brokers to lease and manage the properties. The Superior Court decided that the taxpayers' rental income was subject to the Philadelphia net profits and mercantile license taxes.[6] Interpreting the *Brine* test, the Court, in *Weiner* at 237-38, 235 A.2d at 188, said:

> "Business activity" is basically related to intentional acts of the owners, with primary emphasis on the method and purpose of acquisition . . . any quantum of such action, such as deliberate acquisition and the provision of even minimal services, would qualify the activity in question as a business activity and merit the imposition of the tax.

In *Coventry Hills, Inc. v. Philadelphia Tax Review Board,* 437 Pa. 259, 263 A.2d 348 (1970), the Supreme Court, emphasizing that the corporate taxpayers there had built the apartment building in question, held the taxpayer liable for tax on the rents, even though the taxpayer provided only limited services—grass cutting, snow removal, hall cleaning and minor maintenance. Those services were essentially the same as those provided by the taxpayers in *Price v. Tax Re-*

---

[6] The Philadelphia mercantile license tax ordinance, Philadelphia Code §19-1001, is essentially the same as the Pittsburgh tax on gross receipts. The Philadelphia ordinance defines "business" as "the carrying on or exercising for gain or profit . . . any . . . business . . . or financial activity. . . ."

*view Board,* 409 Pa. 479, 187 A.2d 280 (1963),[7] where the court held that the taxpayers, who had acquired their rental property "by gift and/or devise," were not liable for tax on their rental income. The purpose and method by which the taxpayers acquired their properties is clearly the key basis for distinguishing between the taxpayers in *Coventry Hills* and *Price.* Therefore, in view of *Coventry Hills,* we conclude that *Breitinger,* with respect to the taxpayer's purchased property, is strictly limited to its facts.[8]

When, as here, a taxpayer deliberately acquires rental property, the taxpayer cannot escape liability for earned income and gross receipt taxes on the rents merely by leasing the property on terms whereby the taxpayer lessor does not provide even minimal services to the tenant. *See Philadelphia Tax Review Board v. Adams Avenue Associates,* 25 Pa. Commonwealth Ct. 379, 360 A.2d 817 (1976); *Schorsch v. Tax Review Board,* 49 Pa. Commonwealth Ct. 225, 410 A.2d 1305 (1980).

Mr. Oseroff contends that the common pleas court erred in refusing to permit him to introduce evidence

---

[7] In *Price,* the taxpayers owned an apartment building. They provided the tenants with heat and water and employed a full-time janitor and helper whose principal functions were to care for the heating system, cut the grass, clean snow from the sidewalks, clean the building's hallways and make minor repairs.

[8] *Tax Review Board of Philadelphia v. Heintz Investment Co.,* 461 Pa. 249, 336 A.2d 270 (1975), is consistent with our analysis of the test in *Brine.* The corporate taxpayer in *Heintz* built a building for the purpose of conducting its manufacturing operations. When the taxpayer discontinued its manufacturing business, it leased the property, providing no services to the tenant. The court, in *Heintz* at 252, 336 A.2d at 271, applying the *Brine* test, held that the taxpayer was not liable for the Philadelphia gross receipts tax because the taxpayer did not build the building to lease it, but "leased its real estate as a means to preserve a corporate asset."

to show that his primary reason for purchasing the property here was to avoid federal income tax. Although one element of the test stated in *Brine* is determining "the overall objective of the owner," the significant element of purpose is whether or not Mr. Oseroff deliberately acquired the property with the intent to rent it. See *Weiner* at 237-38, 235 A.2d at 188. Because Mr. Oseroff has never contended that that he did not purchase the building with the intent to rent it, the common pleas court properly excluded the proffered evidence.

Although Mr. Oseroff now asserts that the earned income tax regulations provide that a suit to recover taxes must be begun within three years of the date the taxes in question become due, we are precluded from considering that limitations issue because it was not raised in the common pleas court. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974) ; Pa. R.A.P. 302(a).

Finally, Mr. Oseroff contends that he relied upon earned income tax regulations promulgated by the city treasurer which purported to exempt rental income derived from the passive ownership of real estate from the tax. Because such regulations merely expressed a general rule—with the meaning of passive ownership being the debated issue here—such reliance could provide, at most, a basis for the waiver of penalties.[9]

Accordingly, we affirm.

## Order

Now, December 9, 1982, the order of the Court of Common Pleas of Allegheny County, dated January 21, 1982, Docket Nos. SA 639-81, SA 640-81, are hereby affirmed.

---

[9] Both the city and the school district have waived all tax penalties up to the date of the tax assessment.