Mario **MAGGIO t/a Maggio Brothers, The Estate of Peter Maggio, Deceased, Peter Maggio t/a Maggio Brothers, Serafino Maggio t/a Maggio Brothers, Maggio Brothers**

v.

**TAX REVIEW BOARD OF the CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1996.

Decided April 10, 1996.

---

Margarete E. Pawlowski, for Appellant.

Steven E. Angstreich, for Appellees.

Before DOYLE and SMITH (P.), JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The City of Philadelphia appeals a Philadelphia Common Pleas Court order reversing the Tax Review Board's (Board) decision denying the administrative appeal filed by Mario Maggio, the Estate of Peter Maggio, deceased, and Serafino Maggio (appellees) from the assessment of the City's Mercantile License Tax, General Business Tax and Business Privilege Tax (collectively, business taxes).

At issue is whether the common pleas court erred as a matter of law in its decision that the appellees are not liable for Philadelphia's business taxes on rental receipts and incomes from leasing real estate to their wholly-owned dairy products corporation.

The appellees, Mario, Peter and Serafino Maggio, and their wives acquired 1100 South 11th Street in Philadelphia in 1957. M. Maggio Company, a corporation wholly owned by the appellees, rents and occupies the 11th Street premises. The tenant corporation has paid cash rents to its landlords, the appellees, for 38 years. The appellees lease the property to the corporation on a triple net lease basis. When the appellees acquired the property, they were able to fix the rent due from the corporation in an amount equal to the amount due on the mortgage of the property; they deduct depreciation expenses of the property on their individual tax returns.

When the City assessed the business taxes in question, the appellees paid them under protest and filed a petition for review seeking relief from tax liability. The Tax Review Board found that the appellees first purchased the real estate purposely to maintain and house the business operated by the corporation of which they were sole shareholders. The Board concluded that the appellees, as lessors, were engaged in business within the meaning of the pertinent taxing ordinances. The appellees sought review of this decision in common pleas court. On briefing and argument, the court remanded the matter to the Board for an analysis of the facts under the test articulated in this Court's decision in *Wettach v. Commonwealth*, 153 Pa.Cmwlth. 293, 620 A.2d 730 (1993). On remand, the Board made no additional fact findings but again found that the appellees' rental activity was taxable. The appellees petitioned the common pleas court again for review of the Board's decision. The Court reversed the Board, concluding that the appellees had not engaged in taxable activities.

The parties agree that our scope of review, when a full record has been made before the Board, is identical to that of the common pleas court. We are to determine whether constitutional rights have been violated; whether an error of law was committed; or whether necessary findings of fact are supported by substantial evidence. Section 754(b) of the Administrative Agency Law, 2 Pa.C.S. § 754(b). The common pleas court did not find any of the Board's factual findings to be unsupported and the City does not challenge them as such. Nor is any constitutional question raised. Thus, it remains for

us to decide if, in determining that the appellees suffered no municipal business tax liability as lessors, the common pleas court committed an error of law.

The parties also agree that our Supreme Court has held that the meaning of the terms business or business activity is the same for purposes of the Net Profits Tax, the General Business Tax and Mercantile License Tax. *Dunn v. Tax Review Board of Philadelphia,* 67 Pa.Cmwlth. 431, 447 A.2d 691 (1982). The appellees and appellant do not agree, however, that the activity in question is taxable under the applicable authority, and we must concede that the case law yields some subtle distinctions. A review of that case law is necessary at this point.

We begin with *Price v. Tax Review Board,* 409 Pa. 479, 485, 187 A.2d 280, 283 (1963), in which our Supreme Court stated that, under either the City's Net Profits Tax or the Mercantile [License] Tax, "a distinction must be made between 'a taxable's active conduct of a money making occupation' and 'acts done by one not engaged in business but merely conserving his property.' " The Court there held that brothers and a sister who had acquired a twenty-six unit apartment house by gift or devise and who had formed a partnership to operate it were not liable for the Mercantile License Tax, because the provision of some services to some tenants did "not make a 'business' of the rental of these apartments." *Id.*

One year later, the Supreme Court decided the leading case of *Tax Review Board v. Brine Corporation,* 414 Pa. 488, 200 A.2d 883 (1964), in which it held the Mercantile Tax applicable to a corporation owning and leasing eleven commercial properties that neither managed the properties nor provided services to the tenants. From that case, the Superior Court derived its decision in *Tax Review Board of Philadelphia v. Weiner,* 211 Pa.Superior Ct. 229, 235 A.2d 184 (1967), on which the appellees and, to some extent, the appellant rely.

We quote extensively from *Weiner:*

Brine rendered no services to any of the tenants, nor did it manage any of the properties. In holding Brine subject to the Mercantile License Tax the court did not adopt the board's view that all income of a business corporation must be business income. The court commented, *"On the other hand, we conclude that simply because a certain type of receipt may be derived as rent from real estate, dividends or interest from securities or gain made from the sale of property (i.e., receipts generally referred to as 'unearned') is not itself sufficient reason for holding that such receipts are not derived from the conduct of a business.* (Emphasis added.) It is as possible to conduct an enterprise producing only 'unearned' receipts as it is to conduct an enterprise producing only 'earned' receipts. *The test is neither the characterization of the receipt nor the size of the business; rather it is the* nature of the activity producing the receipt." (Emphasis in original.)

. . . .

"Business activity" is basically related to intentional acts of the owners, with primary emphasis on the method and purpose of acquisition. One of the elements of the test mentioned in *Brine,* i.e., "the overall objectives of the owner," would seem helpful only in determining whether or not a certain act was purposeful. *The conclusion would then be that any quantum of such action, such as deliberate acquisition and the provision of even minimal services, would qualify the activity in question as a business activity and merit the imposition of the tax.* (Emphasis added.)

*Id.* at 235–238, 235 A.2d at 187–188 (citation omitted).

■ The appellees argue that, under *Weiner,* their lease of property to the corporation is not a taxable business activity because neither element of the test set forth in that case is met. First, the appellees' acquisition of the property, while concededly purposeful, was not done for the purpose of renting property so as to realize a profit. They cite the testimony before the Board that, on advice of their accountant, they decided to enter into a triple net lease arrangement with the corporation when they acquired the property to house their cheese

business because of the federal tax benefits. No profit motive existed because, at that time, the lease arrangements rendered receipts adequate only to cover the mortgage on the property.[1] Thus, the element of deliberate acquisition for the business purpose of renting properties is lacking. The appellees cite this Court's decisions in *Philadelphia Tax Review Board v. Penn Center House*, 81 Pa.Cmwlth. 17, 473 A.2d 204 (1984) and *Tax Review Board v. Adams Avenue Associates*, 25 Pa.Cmwlth. 379, 360 A.2d 817 (1976), and the Superior Court's decision in *Balcom Realty Corporation v. Tax Review Board of Philadelphia*, 214 Pa.Superior Ct. 754, 253 A.2d 283 (1969) for the proposition that only when property is acquired for that purpose—to derive income from real estate transactions—can the leasing activity be considered a taxable business activity. Second, the appellees argue that, under their triple net lease agreement, they do not provide even the minimal services necessary to qualify the activity as a business activity under *Weiner*.

An examination of the case law that has developed since *Weiner* compels us to disagree with the appellees' interpretation. In *Coventry Hills, Incorporated v. Tax Review Board of Philadelphia*, 437 Pa. 259, 263 A.2d 348 (1970), following *Brine*, the Supreme Court again held a lessor liable for the Philadelphia Mercantile Tax. There, the taxpayer corporation built and owned a fifty-six unit apartment house. The court limited its *Price* decision to its own facts.

> The taxpayers in *Price* were "fortuitous owners merely conserving their property." *Tax Review Board of Philadelphia v. Weiner*, 211 Pa.Super. 229, 237, 235 A.2d 184, 188 (1967). But the taxpayer here, like those in *Brine* and *Kungsgaten* [422 Pa. 209, 220 A.2d 803 (1966)], is not such an owner. Appellant corporation was organized to build the apartment house involved here, the present stockholders having purchased their stock after construction was completed. This corporation, therefore, can hardly claim to be a "fortuitous owner" conserving its property. Rather, it is a corporation en-

gaged in business, and, as such, is subject to the mercantile tax.

*Coventry Hills*, 437 Pa. at 261, 263 A.2d at 349.

It is true that, after *Brine*, in *Tax Review Board of Philadelphia v. Heintz Investment Company*, 461 Pa. 249, 336 A.2d 270 (1975), the Supreme Court held that rental receipts from a plant building that the taxpayer had leased to another after the cessation of the taxpayer's manufacturing business were not taxable. The Court distinguished the case from its earlier *Brine* decision:

> The reasons for which we found appellant taxable in *Brine* do not exist in the case at bar. In the instant case, appellee-corporation was not originally formed for the propose of leasing the property it acquired, but rather only leased its property after the cessation of its general manufacturing operations, and leased its real estate as a means to preserve a corporate asset that might be needed in the future. Under these circumstances, we hold that appellant's income from its rental property is not taxable within the meaning of the Philadelphia Code.

*Heintz*, 461 Pa. at 252–253, 336 A.2d at 271.

*Heintz*, however, has been interpreted to stand for the principle that, when the purpose of leasing real estate is solely to preserve a corporate asset, the income derived therefrom is "passive," not the result of business activity and therefore not taxable. *Prudential Insurance Company of America v. City of Pittsburgh*, 38 Pa.Cmwlth. 15, 391 A.2d 1326, 1330, n. 6 (1978); *Oseroff v. City of Pittsburgh*, 70 Pa.Cmwlth. 294, 453 A.2d 40, 43, n. 8 (1982) ("Court applying *Brine* test held taxpayer not liable because taxpayer did not build building to lease it, but leased its real estate as a means to preserve a corporate asset."). The record reveals in this case that, unlike in *Heintz*, it was the taxpayers' intention at the outset, when they acquired the property, to lease it to their corporation as the principal place to conduct its business.

---

1. The mortgage on the property was satisfied in 1987, and the returns which the appellees filed under protest indicate that 85% of the gross rental receipts were reported as net income.

While there is a certain allure to appellees' argument that the receipt of rental income is taxable as a business activity only when property is deliberately acquired for the sole purpose of engaging in real estate transactions, it is our judgment that the case law does not uphold it. As Judge Craig noted in *Oseroff*, 453 A.2d at 42, the "key basis for distinguishing" between *Price* and *Coventry Hills* was the fact that in *Price* the apartment building was acquired by gift or devise, whereas in *Coventry Hills* the taxpayer corporation built the apartment building and therefore could not claim to be a fortuitous owner. Although in both of these cases, the taxpayers were engaged in the rental of apartment units, we revert to our Supreme Court's words in *Brine,* relied on by the Superior Court in *Weiner* to formulate its holding. "[S]imply because a certain type of receipt may be derived as rent from real estate . . . (i.e., receipts generally referred to as 'unearned') is not itself sufficient reason for holding that such receipts are not derived from the conduct of a business." *Brine,* 414 Pa. at 494, 200 A.2d at 886. In other words, when there is rental income from property that is actively acquired for business purposes, as opposed to received passively by its owners (*Price* ), or held only as an asset to be conserved (*Heintz* ), then taxable business activity from that income may be discerned. It is not dispositive that the property is acquired for some purpose other than that of real estate transactions.

Moreover, we agree with the appellant that the rendering of services is no longer necessary to establish that the taxpayer engages in business activity. This principle was stated in *Adams Avenue Associates* (net lease agreement does not in any way change business purpose of owning real estate for profit) and reiterated in *Schorsch v. Tax Review Board,* 49 Pa.Cmwlth. 225, 410 A.2d 1305 (1980). Finally, in *Oseroff,* we said:

> When, as here, a taxpayer deliberately acquires rental property, the taxpayer cannot escape liability for earned income and gross receipt taxes on the rents merely by leasing the property on terms whereby the taxpayer lessor does not provide even minimal services to the tenant.

*Id.* 453 A.2d at 43 (citations omitted).

Here, the Maggio brothers acquired rental property, property they intended from the outset to rent to their corporation, by deliberate means—they purchased it. Under the holdings of *Brine, Weiner,* and *Oseroff,* they have deliberately acquired property for business purposes and do not escape liability by means of a triple net lease. That their receipt of rent may be merely a by-product of their *principal* business activity does not remove it from the ambit of taxable business activity. *Weiner.*

The common pleas court was of the opinion that our decision in *Wettach* controls the question in this case. At issue there was whether a taxpayer's share of depreciation loss on rental property was properly offset against his business income under the Pennsylvania Personal Income Tax.[2] In that case, a general partner of a law firm also participated in a partnership which was, in turn, a partner in another general partnership that leased space back to the law firm. The Commonwealth Department of Revenue disallowed the taxpayer's reporting of his depreciation loss from the rental partnership as an offset against the net profit from his law firm partnership. Section 303(a) of the Tax Reform Code[3] lists separate classifications of income from business or professions, 72 P.S. § 7303(a)(2), and from rents, 72 P.S. § 7303(a)(4). Against the taxpayer's argument that his share of depreciation loss was an offsetable business loss, this Court concluded that the partnership's rental activity was *not* a business activity.

We relied on our holding in *Morgan v. Commonwealth,* 42 Pa.Cmwlth. 557, 400 A.2d 1384, 1386 (1979) *aff'd,* 496 Pa. 400, 437 A.2d 933 (1981), that "the *sine qua non* of a commercial enterprise is the rendering of goods and services to others in the marketplace. . . ." *Wettach,* 620 A.2d at 733. *Mor-*

---

2. This tax is levied pursuant to the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101—10004.

3. Added by Section 4 of the Act of August 31, 1971, P.L. 362, *as amended.*

**760**

gan and *Wettach* do not control. Those cases interpreted a different taxing statute, which statute by its own terms segregates business profits and rents as distinct categories of *income;* there is no such distinction in Philadelphia's business tax ordinances. The question in those cases was whether losses from one separately enumerated category of income could offset income from another. Even if we were to conclude that the touchstone of "commercial enterprise" found in *Morgan* and *Wettach* applies to this appeal, we would have no problem concluding that the appellees render a service—the leasing of a building—to another, the tenant corporation.

As in *Wettach,* the taxpayers here, as individual persons, entered deliberately into a lease arrangement with a corporate person to achieve specific financial and tax results that were thought to be more beneficial to them than outright ownership of the property by the corporation.[4]

We hold, therefore, that the common pleas court erred in finding that the appellees' leasing of their building to their wholly-owned corporation was not a business activity as that term has been interpreted for purposes of deciding the applicability of Philadelphia's Net Profit, General Business and Mercantile License taxes. We see no reason to conclude that the term should be interpreted in any way differently for the Business Privilege Tax, which states that income from a trade or business is not limited to corporate charter purpose or principal business activity. Philadelphia Code, Business Privilege Tax Regulation § 101(E). The appellees purposely acquired their property and leased it to another, their corporation. Even without the provision of minimal services, under the triple net lease they have executed, their rental activity is taxable as a business activity. Accordingly, we will reverse the court's order.

### ORDER

AND NOW, this 10th day of April, 1996, the order of the Philadelphia Court of Common Pleas, at No. 3086 March Term 1994, dated September 7, 1994, is hereby reversed.

---

4. As the Court said in *Wettach, 620 A.2d at 735,* when referring to the law firm partnership which was a partner in the rental partnership that leased property back to the law firm, "the Court is confronted with two legal entities, not one."